Nelson COX, Appellant,

v.

**UNITED STATES, Appellee.**

No. 07–CF–1345.

District of Columbia Court of Appeals.

Argued June 2, 2009.*

Decided July 15, 2010.

---

* Following oral argument, the court requested supplemental briefing. The parties submitted their supplemental briefs in January 2010. Neither party requested further oral argument.

Lisa D. Chanel for appellant.

Leslie Ann Gerardo, Assistant United States Attorney, with whom Jeffrey A. Taylor and Channing D. Phillips, respectively the United States Attorneys at the times of original and supplemental briefing, Roy W. McLeese III, Elizabeth Trosman, and Sharon K. Donovan, Assistant United States Attorneys, were on the briefs, for appellee.

Before GLICKMAN, KRAMER and OBERLY, Associate Judges.

GLICKMAN, Associate Judge:

After a jury trial, appellant Nelson Cox was convicted of two crimes: (1) possession with intent to distribute a controlled substance, cocaine, while armed,[1] and (2)

1. D.C.Code § 48–904.01(a)(1) (2001); *id.* § 22–4502(a) (2001 & Supp.2009) (providing for additional penalties for committing dangerous crime while armed). *See also*

the commission of that offense (a felony) while on release in another case.[2] He was acquitted of a number of other offenses: possession of a firearm during a crime of violence (PFCV); carrying a pistol without a license (CPWL); four counts of possession of an unregistered firearm (UF); and eight counts of unlawful possession of ammunition (UA). The counts on which Cox was convicted, as well as the PFCV and CPWL counts and one count each of UF and UA, stemmed from his arrest in a traffic stop. The remaining UF and UA counts resulted from a subsequent police search of Cox's mother's residence.

Cox raises a bevy of challenges to his convictions. Only one of his claims entitles him to any relief. We hold that the trial court responded erroneously to a jury note seeking clarification of the phrase "while armed with or having readily available a pistol" in the instruction on possession with intent to distribute cocaine (PWID) while armed. The court did not dispel the jury's evident confusion as to the meaning of the term "readily available." By telling the jury to give the words their "ordinary meaning ... in everyday conversation," the trial court permitted the jury to convict Cox simply because a pistol was within his reach, even if he was unaware of the weapon's presence or lacked the intent to exercise dominion or control over it. As we cannot deem the error to have been harmless, appellant's conviction of PWID *while armed* cannot stand.

## I. Factual Background

### A. The September 17, 2005 Traffic Stop

On September 17, 2005, United States Park Police Officer Frank Morales stopped a car with windows tinted more darkly than District law permits. Officer Morales and his partner, Officer Cynthia Barrett, approached the car while a third police officer, Officer James Knapp, arrived to back them up. As Officer Morales came up on the driver's side of the vehicle, he noticed the front seat passenger bend over and move his hands at or below knee level.

Upon addressing the driver to tell him the reason for the stop, Officer Morales smelled alcohol on the driver's breath and asked him to step out of the car to take a sobriety test. The driver agreed to do so and asked whether he was going to be searched, explaining that he had a BB gun in his waistband. At Officer Morales's directions, the driver removed the gun and placed it atop the vehicle. The front seat passenger did not have any weapons on his person.

Meanwhile, appellant Cox, who was sitting in the seat behind the front passenger, had been ordered to put his hands where the officers could see them. Despite that order, Cox allowed his hand to drop toward his waistband. Worried that Cox was reaching for a gun, Officer Morales directed him to pull his hand back up. Cox complied, but as Morales tried to communicate with Officer Knapp, Cox again allowed his hand to drop. Morales then ordered him out of the car and began to pat him down for weapons.

■■■ During the pat down, Officer Morales's "hand went over [what was] immediately apparent to [him] [as] a bag of narcotics" concealed in an extra pocket in Cox's jacket. (We quote the testimony, credited by the trial court, that Morales gave in the hearing on Cox's evidence sup-

---

D.C.Code § 22–4501(2) (Supp.2009), formerly § 22–4501(g) (2001) (defining possession with intent to distribute a controlled substance as a "dangerous crime").

2. *Id.* § 23–1328(a)(1) (2001).

pression motion.) The bag was about "two inches long, maybe a little over an inch wide and full" of what Morales identified as crack cocaine. The officer testified that he did not squeeze or manipulate the bag, but knew at once what it was, since he had felt similar objects "over a hundred times easy." Morales proceeded to seize approximately sixty ziplock plastic bags containing an off-white rock-like material. This cocaine, as later testing confirmed it to be, was the subject of the PWID while armed count on which Cox was convicted.[3]

After placing Cox under arrest, the police searched the car. Underneath the front passenger seat, Officer Morales found a Taurus .38 caliber revolver lying on the floor behind the lever used to move the seat forward or backward. The handle of the pistol was facing the rear of the car, where Cox had been seated. The pistol was loaded with distinctive, two-toned hollow-point bullets. The police later test-fired the weapon and determined that it was operational. The "while armed" enhancement of the PWID count on which Cox was convicted related to this pistol, as did the PFCV and CPWL counts and one of the UF counts, on each of which Cox was acquitted.[4]

At the police station, Cox gave a statement on videotape in which he said he had found the drugs and put them in his pocket, intending either to sell them to a crack user or to give them away. Cox did not admit to having known about the pistol hidden under the front passenger seat.[5]

---

**3.** Cox contends the trial court should have granted his Fourth Amendment motion to suppress the cocaine because, in seizing the bag in his jacket, Officer Morales exceeded the limits of a valid frisk for weapons. We do not agree. We defer to the trial court's prerogative to credit Morales's testimony that he immediately recognized the contraband by its feel without any need to manipulate it. That being so, there was "no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons[.]" *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). And as the drugs were within Morales's "plain feel," he had probable cause to seize them and arrest Cox. *See id.* at 375–77 & n. 3, 113 S.Ct. 2130; *see also Ball v. United States*, 803 A.2d 971, 979–80 (D.C.2002) (discussing the "plain feel" doctrine and noting that distinctive packaging may help support a police officer's conclusion that the nature of the contraband was "immediately apparent").

For the first time on appeal, Cox claims he was deprived of his Sixth Amendment right of confrontation when the trial court admitted the written report of the Drug Enforcement Administration chemist who analyzed and identified the cocaine in the absence of live testimony from the chemist. *See Melendez–Diaz v. Massachusetts*, —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). However, Cox's claim fails the test for plain error;

as Cox does not contest the report's accuracy, deny that he had adequate pretrial notice of its contents, or assert that his statutory right to subpoena the chemist for cross-examination was impaired, he has not shown that admitting the report seriously affected the fairness, integrity, or public reputation of the proceedings. *See Thomas v. United States*, 914 A.2d 1, 22–24 (D.C.2006).

**4.** We reject as meritless Cox's assertion that the Taurus handgun was irrelevant and should not have been admitted in evidence because "it was not connected in any way" to him or the drugs found in his pocket. Brief of Appellant at 28. The weapon was found in close proximity to Cox, with its handle facing him, while he was carrying a sizable quantity of cocaine, and its relevance to the charges that he was armed with it or had it readily available, and that he possessed or carried it, is obvious. (The *sufficiency* of the government's proof of those charges is a different matter, which we take up below.)

**5.** Cox claims the videotape of his statement was of such poor quality that the trial court erred in admitting it in evidence. At trial, however, Cox took the opposite position, requesting that the videotape be played for the jury in order to show that a prosecution witness had reported his statement incorrectly. In so doing, Cox waived his current objection. *Brown v. United States*, 627 A.2d 499, 508

## B. The December 7, 2005 Residential Search

Cox also told the police in his videotaped statement that he had been living at his mother's residence. Two-and-a-half months later, on December 7, 2005, United States Park Police officers executed a search warrant at that location. Throughout the premises, the officers found firearms and ammunition, including bullets of the same type, and bearing the same markings, as those discovered in the pistol seized by Officer Morales during the September traffic stop. Along with the firearms and ammunition, the Park Police also found photographic identification papers and other documents in Cox's name, including mail sent to him at that address. (At the time of the search, Cox was no longer living in the house, as he had been incarcerated as a result of his September arrest.)[6]

## II. The "While Armed" Enhancement

 D.C.Code § 22–4502(a) (Supp.2009) permits the imposition of enhanced penalties on persons convicted of having committed a crime of violence or a dangerous crime "when armed with or having readily available" a pistol. Cox raises two challenges to his conviction under this statute. First, he contends, the trial court should have granted his motion for judgment of acquittal because the government failed to adduce sufficient evidence to prove he was "armed with" the pistol under the front passenger seat or that it was "readily available" to him while he was carrying the cocaine.[7] Second, he argues, the trial court erred in instructing the jury on the meaning of the words "armed with or having readily available" when the jury requested clarification. We address these claims in turn.

## A. Sufficiency of the Evidence

 "A court must deem the proof of guilt sufficient if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "[8] We must give " 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' "[9]

 In the present case, the sufficiency question is a close one. Cox was not

(D.C.1993) ("We have repeatedly held that a defendant may not take one position at trial and a contradictory position on appeal.").

6. Cox argues the trial court should have excluded the evidence seized in the December search of his mother's residence for three reasons: (1) the government withheld the identity of the confidential source who told the police prior to the search that he had seen firearms there—"the only witness," Cox conclusorily asserts, "who could have provided evidence relating to [Cox's] innocence" (Brief of Appellant at 30); (2) as a discovery sanction, because the detective in charge of photographing the evidence in situ negligently allowed the photographs to be destroyed before trial; and (3) the evidence lacked legitimate probative value and prejudiced Cox on the charges arising out of the September traffic stop. But Cox raised none of these objections in the trial court, and the introduction of the evidence was certainly not plain error.

7. Cox's further assertion, that the evidence was insufficient even to prove him guilty of the predicate PWID offense, is meritless. The drugs were found on his person, the chemist's affidavit established their identity and measurable quantity, the chain of custody of the drugs was unbroken, and Cox admitted his intent to distribute them.

8. *Rivas v. United States*, 783 A.2d 125, 134 (D.C.2001) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in the original)).

9. *Id.*

"armed with" the pistol hidden under the seat in front of him; we have held that "armed with" in D.C.Code § 22–4502(a) "means actual physical possession of the pistol or other firearm." [10] And, while Cox was sitting within reach of the pistol, proximity and ease of access alone do not suffice to prove ready availability: we have construed the statute to mean that "in order to have a weapon 'readily available,' one must at a minimum have constructive possession of it." [11] To prove constructive possession, the prosecution was required to show that Cox knew the pistol was present in the car, and that he had not merely the ability, but also the intent to exercise dominion or control over it. [12]

██ The elements of constructive possession may be established by direct or circumstantial evidence. [13] Direct evidence of Cox's possession of the pistol was lacking: Cox did not confess to having possessed the weapon, no witness testified to having seen him with it, and his fingerprints were not found on it. Moreover, as the pistol was not in Cox's plain view, his knowledge and intent cannot be inferred from the mere fact that he was near it. [14] Indeed, as Cox argues, the pistol could have been hidden by the front seat passenger, whose suspicious movements Officer Morales observed when he approached the

car. The government did not present any evidence at trial as to the relationship between Cox and the front seat passenger (or any other occupant of the vehicle). [15]

Nonetheless, other circumstantial evidence in addition to the pistol's location close to Cox supported the inference that Cox constructively possessed it. To begin with, as the government argued at trial, the orientation of the pistol on the floor under the seat, with its handle facing the rear, suggested it was the rear-seat passenger, Cox, who had stowed it there. The fact that the pistol was loaded with the same distinctive ammunition that the police subsequently discovered in the house where Cox had been living also helped link the weapon to him. Furthermore, this is a situation where "the additional evidence needed to complete the proof of constructive possession may be furnished by evidence linking the accused to an ongoing criminal operation of which that possession is a part." [16] To invoke that principle, "[t]he government must show a connection between the seized article [here, the pistol] and the criminal venture [here, the cocaine distribution activity] in order to enable the jury reasonably to infer the venturer['s] knowledge of the article." [17] Such a connection was estab-

10. *Johnson v. United States*, 686 A.2d 200, 205 (D.C.1996).

11. *Guishard v. United States*, 669 A.2d 1306, 1314 (D.C.1995).

12. *See Rivas*, 783 A.2d at 129. The government did not rely on an aiding and abetting theory of liability.

13. *Id.*

14. *Cf. Burnette v. United States*, 600 A.2d 1082, 1084 (D.C.1991) ("[T]he inference of a car passenger's intent to exercise control drawn solely from evidence of the passenger's convenient access to contraband (*e.g.*, an un-

registered weapon or illegal drugs) in a car should not be extended beyond situations where the evidence shows the contraband was in plain view of that passenger defendant.").

15. However, as "[c]onstructive possession may be sole or joint," *Rivas*, 783 A.2d at 129, evidence connecting the pistol to the front-seat passenger does not necessarily exonerate Cox.

16. *Burnette*, 600 A.2d at 1084 (internal quotation marks omitted).

17. *Easley v. United States*, 482 A.2d 779, 782 (D.C.1984).

lished at trial by a police drug expert, who testified that drug dealers in the District of Columbia often carry firearms for protection. The expert also testified that the quantity of cocaine found on Cox was not consistent with merely personal use; *i.e.*, it manifested his intent to sell the drugs. The evidence that Cox was a cocaine dealer thus supported the inference that the pistol at his feet belonged to him.[18]

The evidence that Cox constructively possessed the pistol was hardly compelling, as his acquittals on the possessory counts of the indictment (PFCV, CPWL, UF and UA) attest. We conclude, however, that the evidence in its entirety was just strong enough to permit the jury to consider the question.

### B. Adequacy of the Court's Instruction on Ready Availability

 The trial court's initial instruction with respect to the "while armed" element of PWID while armed mirrored the standard jury instruction on the subject in common use in the District of Columbia.[19] It simply told the jury that it had to determine whether Cox "was armed with or had readily available a pistol," without defining the terms "armed with" and "readily available." Cox did not object to the omission. We held in *Guishard* that failure to define the terms used in the "while armed" instruction was not plain error.[20]

During deliberations, though, the jury sent the trial court a note inquiring whether the term " 'readily available' ... mean[t] easily accessible or ha[d] anything to do with knowledge." Without taking the bench and discussing the note with counsel, the court replied to the jury in writing, telling it only to "give the words the ordinary meaning they would have in everyday conversation."

From the trial court docket entries, it appears that a substitute judge may have handled the matter from chambers because the trial judge was on leave when the jury sent its note. Regardless of what happened, the judge did not proceed correctly: "the jury's message should have been answered in open court, and defense counsel should have been given an opportunity to be heard before the trial judge responded."[21] The government properly acknowledges that, under the circumstances, Cox did not forfeit his claim by his failure to make a contemporaneous objection on the record to the court's re-instruction of the jury. Thus, the claim is not subject to the strictures of plain error review.

 We agree with Cox that the trial court erred not only procedurally, but—more importantly—in the substance of its response to the jury note. Decisions regarding re-instruction of a jury are committed to the trial court's discretion, but when a jury sends a note indicating its confusion with the law governing its delib-

---

**18.** *See, e.g., United States v. Booker,* 369 U.S.App.D.C. 276, 280, 436 F.3d 238, 242 (2006) ("[W]e reaffirm that evidence of a defendant's possession of guns can properly be used to show his connection to drugs, and vice versa.") (internal quotation marks, brackets and citation omitted).

**19.** *See Criminal Jury Instructions for the District of Columbia,* Instruction No. 8.101, "Armed Offenses—Added Element" (5th ed. rev. 2009).

**20.** *Guishard v. United States,* 669 A.2d 1306, 1315 (D.C.1995).

**21.** *Hallmon v. United States,* 722 A.2d 26, 27–28 (D.C.1998) (internal quotation marks and brackets omitted) (quoting *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975)).

erations, "the trial court must not allow that confusion to persist; it must respond appropriately."[22] This means that "[w]hen a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy."[23] The jury note clearly evinced confusion as to whether easy accessibility alone is enough to prove that a pistol is "readily available" within the meaning of the enhancement statute. As we explained in addressing the sufficiency of the evidence, it is not: although "readily available" and "easily accessible" are synonymous in common parlance,[24] as used in the statute, "readily available" is a term of art that incorporates the requirements of constructive possession (one element of which is knowledge on the defendant's part). The trial court therefore erred in telling the jury to give the words "readily available" their "ordinary meaning" in "everyday conversation." Instead, to clear up the jury's confusion, the court should have re-instructed it with "concrete accuracy" on the specialized legal meaning of "readily available"—in other words, on the government's burden to prove that Cox knew the pistol was present and had

not only the ability, but also the intent, to exercise dominion or control over it.

The jury acquitted Cox of the possessory offenses pertaining to the pistol, apparently rejecting the prosecution argument that he constructively possessed the weapon. Unless the jury was behaving irrationally (which we have no reason to suppose), its verdict implies that it found Cox guilty of PWID "while armed" only because it labored under the misunderstanding, fostered by the trial court's erroneous reply to its inquiry, that the pistol could be "readily available" to Cox even if he did not constructively possess it. We therefore cannot say with the requisite "fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the [jury's] judgment was not substantially swayed by the error."[25] Cox is entitled to relief from his conviction of PWID while armed.

■■■■■ Our conclusion affects only the "while armed" component of the offenses of conviction. We have no reason to overturn Cox's convictions for the lesser-included offense of (unarmed) PWID and for committing that felony offense while on release in another case.[26]

---

**22.** *Alcindore v. United States*, 818 A.2d 152, 155 (D.C.2003).

**23.** *Whitaker v. United States*, 617 A.2d 499, 501 (D.C.1992) (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946)).

**24.** *See Webster's Third New Int'l Dictionary* 150 (definition of "available"), 1889 (definition of "readily") (1993).

**25.** *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

**26.** Cox argues that his convictions should be reversed in their entirety on account of improper re-direct examination and rebuttal argument by the prosecutor. Specifically, after Cox attacked Officer Morales's credibility on cross-examination, the trial court permitted

the prosecutor on re-direct to ask the witness to describe "what would happen to" him if he lied under oath. Over Cox's objection, Morales testified to the serious adverse consequences he would suffer, which included losing his job and being prosecuted for perjury. If this constituted improper rehabilitation of the witness, which we do not decide, *cf. Harris v. United States*, 602 A.2d 154, 165 (D.C. 1992) (en banc), it certainly was not the "inflammatory appeal" to the jury's passions and prejudices that Cox makes it out to be. Any error in allowing the testimony could not have influenced the jury's verdict with respect to the surviving counts of conviction (unarmed PWID and commission of a felony while on release), as to which the government's evidence was overwhelming.

We reach the same conclusion as to the alleged improprieties in the prosecutor's rebuttal argument. In the course of defending

## III. Conclusion

In light of the trial court's instructional error, we reverse Cox's conviction of PWID while armed and remand for further proceedings consistent with this opinion. On remand, the government may choose to accept entry of a judgment of conviction on the lesser-included offense of (unarmed) PWID, in which case the trial court will need only to re-sentence Cox (and, possibly, make a clerical correction to the second count of conviction). Alternatively, the government may seek to retry Cox.[27] The parties have not briefed, and consequently we do not reach, the question of whether double jeopardy principles would forbid such a retrial in light of Cox's acquittal on the PFCV, CPWL, and UF counts involving the same pistol.[28]

*Reversed and remanded.*

the credibility of the police witnesses (which defense counsel had impugned), the prosecutor made a few comments—*e.g.*, "They told you the truth"—that, viewed in isolation, could be taken as impermissible witness vouching. Cox failed to object, however, and the trial court did not commit plain error by not intervening *sua sponte*. Taken as a whole, the prosecutor's rebuttal argument constituted fair comment on the evidence, and even if some of her remarks were "infelicitous, they were relatively innocuous, for it is likely that the jury understood the prosecutor to be arguing merely that the particular testimony she cited evinced that [the police witnesses] were credible." *Finch v. United States,* 867 A.2d 222, 227 (D.C.2005).

27. *See, e.g., Gathy v. United States,* 754 A.2d 912, 920 (D.C.2000) (reversing judgment of conviction of aggravated assault while armed

and remanding the case for the government to either (1) ask the trial court to enter a judgment of conviction on the lesser-included offense, or (2) "retry [appellant] on the original charge of aggravated assault while armed").

28. *Cf. Evans v. United States,* 987 A.2d 1138 (D.C.2010) (holding that where a jury returned inconsistent verdicts, convicting the defendant of felony murder while acquitting him of the underlying felony, and the defendant was granted a new trial on the felony murder charge because inadmissible evidence had been submitted to the jury during its deliberations, principles of double jeopardy and collateral estoppel did not preclude the retrial). We express no opinion as to whether the present case is distinguishable from *Evans.*