Jaroki E. CLYBURN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 09–CF–1165, 09–CF–1173.

District of Columbia Court of Appeals.

Argued Nov. 8, 2011.
Decided June 28, 2012.

Sloan S.J. Johnston, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Andrea Hertzfeld, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III and Lindsey Suttenberg, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and REID, Senior Judge.*

REID, Senior Judge:

A jury convicted appellant, Jaroki E. Clyburn, of multiple drug and weapons violations, including unlawful possession with intent to distribute a controlled substance (cocaine) while armed ("PWID-WA"), in violation of D.C.Code §§ 48–904.01(a) and 22–4502(a) (2001). Mr. Clyburn contends that the evidence was insufficient to permit imposition of the enhancement penalty found in D.C.Code § 22–4502(a),[1] because the government's evi-

---

* Judge Reid was an Associate Judge, Retired, at the time of argument. Her status changed to Senior Judge on December 12, 2011.

1. D.C.Code § 22–4502(a) provides in pertinent part:

(a) Any person who commits a crime of violence, or a dangerous crime in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon (including a sawed-off shotgun, shotgun, machine gun, rifle, dirk, bowie knife, butcher knife, switchblade knife, razor, blackjack, billy, or metallic or other false knuckles): (1) May, if such person is convicted for the first time of having so committed a crime of violence, or a dangerous crime in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment which may be up to, and including, 30 years for all offenses except first degree murder while armed, second degree murder while armed, first degree sexual abuse while armed, and first degree child sexual abuse while armed, and shall, if convicted of such offenses while armed with any pistol or firearm, be imprisoned for a mandatory-minimum term of not less than 5 years; and

(2) Shall, if such person is convicted more than once of having so committed a crime of violence, or a dangerous crime in the District of Columbia, or an offense in any other jurisdiction that would constitute a crime of violence or dangerous crime if committed in the District of Columbia, be sentenced, in addition to the penalty provided for such crime, to a period of imprisonment of not less than 5 years and, except for first degree murder while armed, second degree murder while armed, first degree sexual abuse while armed and first degree child sexual abuse while armed, not more than 30 years, and shall, if convicted of such second offense while armed with any pistol or firearm, be imprisoned for a mandatory-minimum term of not less than 10 years.

dence failed to prove beyond a reasonable doubt that he was armed with or had a firearm "readily available." We are constrained to agree, and we reverse Mr. Clyburn's PWIDWA conviction and remand his case to the trial court, with instructions to enter judgment of conviction on the lesser-included offense of (unarmed) PWID, and to re-sentence him.[2]

## FACTUAL SUMMARY

The government presented evidence showing that on the evening of October 27, 2006, an undercover officer of the Metropolitan Police Department ("MPD"), Marvin Washington, was part of a buy-bust operation, in the Northeast quadrant of the District of Columbia. Officer Washington approached a man in the 1600 block of Montello Avenue and asked for a "smoke," meaning crack cocaine. The man walked with Officer Washington to the 1100 block of Queen Street. After telling Officer Washington to wait, the man proceeded to the front door of an apartment building. Someone, who later was identified as Mr. Clyburn, exited the apartment building. Officer Washington gave Mr. Clyburn $40.00 in pre-recorded funds, and in exchange, Mr. Clyburn handed the officer a "tan rock substance." Mr. Clyburn returned to the apartment building, and specifically to Apartment No. 1. Officer Washington's undercover partner, who was on the other side of Queen Street, observed the transaction and alerted members of the arrest team.

MPD Officer James Boteler was a member of the arrest team for the buy-bust operation. Upon receiving the lookout broadcast, he proceeded to the four-unit, two-story apartment building from which Mr. Clyburn exited during the drug transaction with Officer Washington. Officer Boteler entered the building, noticed that the door to Apartment No. 1 "was opening," and he realized that the man in the doorway matched the description given by the lookout broadcast. Officer Boteler grabbed Mr. Clyburn's arm and was pulled into the apartment as Mr. Clyburn sought to return to his apartment. The officer placed handcuffs on Mr. Clyburn and another officer took charge of him.

Officer Boteler described the layout of Mr. Clyburn's apartment. The living room, which was immediately inside the front door, contained an L-shaped couch, a coffee table and a book shelf. The living room "opened up" into a dining area with a large fish tank and a dining room table. The dining area, which "also acted as a hallway, . . ., led to a kitchen and then kind of a storage area behind that." The bathroom and a bedroom with a bed and a closet were off to the left.

To make sure no other people were in the apartment, Officer Boteler conducted a protective sweep by walking through each room and calling out, "Police. Anybody in here?" The officer passed through the living room where he had handcuffed Mr. Clyburn, and proceeded to the dining room/hallway area, continued to the kitchen and a storage area, back tracked past a bathroom, and entered the bedroom. He looked under the bed "to make sure nobody was hiding under the bed." He noticed a "large black-colored assault rifle." Upon seeing a closed closet door, he drew

---

**2.** On appeal, Mr. Clyburn only challenges his PWIDWA conviction. However, he also was convicted of distribution of a controlled substance, possession of a firearm during a crime of violence ("PFCV"), unlawful possession of a firearm having been previously convicted of a felony ("FIP"), and unlawful possession of ammunition ("UA"). We leave it to the trial court on remand to determine the impact of our decision, if any, on Mr. Clyburn's other convictions and sentences.

his weapon, and again called out, "Police." He opened the closet door and on the shelf he observed a live ammunition clip belonging to an assault rifle. He decided to obtain an emergency search warrant, and he asked other officers to secure the apartment. On cross-examination, Officer Boteler acknowledged that he never saw Mr. Clyburn touch the assault rifle or the ammunition that was seized from the apartment.

After Officer Boteler returned to the apartment with the search warrant, MPD Officer Edward Hansohn, another member of the arrest team, removed a Comcast bill bearing Mr. Clyburn's name, from the dining room table, the loaded assault rifle from underneath the bed, and the ammunition clip from the closet. In addition, he seized empty Ziploc bags and numerous disposable gloves. Officer Boteler retrieved identification cards from the bedroom which bore Mr. Clyburn's name. MPD Officer Walter Gilmore, yet another member of the arrest team, took from a table in the apartment two grams of a white rock-like substance, a razor blade, glass plate and two Ziploc bags, all with white residue. The government stated in closing argument that these items were found in the kitchen. MPD Investigator James Tyler testified that he and another officer found $116.00, including the $40.00 in pre-recorded funds, on the coffee table in the living room.

The government's expert witness, Detective George Thomas, was not familiar with the facts of Mr. Clyburn's case. His testimony concentrated, in part, on the distribution and packaging of narcotics, including "the manner in which narcotic dealers distribute narcotics in the District of Columbia and the pricing." Detective Thomas did not discuss the connection between gun possession and a drug transaction.

At the close of the government's case, defense counsel moved for judgment of acquittal on all counts, especially the PWIDWA charge. The trial court denied the motion, essentially on the grounds that a reasonable trier of fact could conclude that Mr. Clyburn owned the assault rifle, or that it was "in his possession or under his control" because the government's evidence established that the apartment belonged to Mr. Clyburn, "he was the sole occupant," and the assault rifle "was lying under the bed." Therefore, "the evidence and the circumstances indicate that [jurors] can conclude [the rifle] was in his possession or under his control."

Mr. Clyburn called as his sole witness Investigator Tyler. Defense counsel sought to impeach his earlier testimony relating to Officer Washington's identification testimony.

The jury returned a guilty verdict on the PWIDWA count, as well as on the charges of unlawful distribution of cocaine, possession of a firearm during a crime of violence or dangerous offense, unlawful possession of a firearm, unlawful possession of ammunition, and failure to appear in court (Bail Reform Act violation).

## ANALYSIS

With respect to his challenge to the sufficiency of the evidence relating to the enhancement penalty, Mr. Clyburn argues that under our case law, " 'carrying on or about' and 'armed with or readily available' are equivalent concepts." Thus, "a firearm would be readily available to an individual only in circumstances where he carried the firearm on or about his person— that is, when the firearm was 'near, in close proximity to him, and within his convenient control and easy reach, so that he could promptly use it, if prompted to do so by any violent motive.' " He maintains that in his case, "[t]he government adduced no

evidence of drug possession outside of the living room area, which was just inside the front door of the apartment," and the rifle which was in the bedroom under the bed was not "readily available." Thus, Mr. Clyburn asserts that this court should "vacate his PWIDWA conviction, and remand to the trial court to enter judgment on the lesser-included offense of PWID and to resentence [him] accordingly."

The government maintains that "carrying on or about the person" and "armed with or having readily available" are not equivalent concepts under our case law, and that there is only "dicta" to the contrary. Furthermore, the government argues that when the evidence is considered in the light most favorable to the government, and given justifiable inferences and the jury's right to weigh the evidence, "the evidence was sufficient to permit a reasonable jury to find that [Mr. Clyburn] had a loaded assault rifle 'readily available' to him under his bed only one room away from where he possessed cocaine in his one-bedroom apartment." Therefore, the government contends, the evidence was sufficient to sustain the enhancement penalty.

■ Under the applicable standard of review governing a sufficiency challenge, we "view [ ] the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Ball v. United States,* 26 A.3d 764, 768 (D.C.2011) (quotation marks omitted and alteration in original). But, "we review the trial court's decision *de novo* " where the meaning of a statutory phrase or term—here "having readily available any pistol or firearm" during "a dangerous crime"—is at issue. *Tippett v. Daly,* 10 A.3d 1123, 1126 (D.C. 2010) (en banc).

■ "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Id.* (quotation marks omitted). We examine the plain meaning of a statute first, "construing words according to their ordinary meaning." *Columbia Plaza Tenants' Ass'n v. Columbia Plaza Ltd. P'ship,* 869 A.2d 329, 332 (D.C.2005). "The literal words of [a] statute, however, are not the sole index to legislative intent, but rather, are to be read in the light of the statute taken as a whole, and are to be given a sensible construction, and one that would not work an obvious injustice." *Id.* (quotation marks omitted and alteration in original). "[I]n appropriate cases, we also consult the legislative history of a statute." *Id.* (quotation marks omitted).

In the District of Columbia, "distribution of or possession with intent to distribute a controlled substance," is a "dangerous crime." D.C.Code § 22–4501(2) (defining "dangerous crime"). Consequently, Mr. Clyburn is subject to the enhancement penalty under § 22–4502(a), involving "a crime of violence or a dangerous crime," if the evidence is sufficient to establish that he committed PWIDWA, that is, that he was "armed with or ha[d] readily available any pistol or any other firearm." Consistent with our case law, the government "agrees that [Mr. Clyburn] was not 'armed with' the assault rifle" when he committed PWID. *See Johnson v. United States,* 686 A.2d 200, 205 (D.C.1996) (holding that " 'while armed with' under [the penalty enhancement statute] means actual physical possession of the pistol or other firearm."); *see also Brown v. United States,* 691 A.2d 1167, 1169 (D.C.1997) ("in order to be convicted of PWID while 'armed with' a pistol, a defendant must have been in 'actual physical possession' of the pistol while possessing the drugs with intent to distribute, not merely in close proximity to

it."). Consequently, we must decide whether the assault rifle was "readily available" to Mr. Clyburn while he committed his PWID offense.

■ We turn now to the pertinent statutes and our case law to discern the meaning of "readily available" within the context of this PWIDWA case. We conclude first that, contrary to Mr. Clyburn's argument, "on or about" and "armed with or readily available" are not equivalent terms. Congress used the "armed with or readily available" phrase in 1932 when it enacted a weapons statute, now codified as D.C.Code § 22–4502, designed in part "to control the possession, sale, transfer and use of pistols and other dangerous weapons in the District of Columbia, [and] to provide penalties"; the penalty or sentencing enhancement provision, which is at issue here, is found in section 2 of the statute. 72 P.L. No. 275, 47 Stat. 650, July 8, 1932. In enacting what is now § 22–4502(a), Congress intended to add a penalty to the sentence of a person who commits a crime of violence or a dangerous crime involving a firearm, as evidenced by the use of the plain and ordinary words—"may" or "shall" "be sentenced, in addition to the penalty provided for such crime, to [a

specified penalty.]" D.C.Code §§ 22–4502(a)(1), (2), and (3). Moreover, the Senate report accompanying the bill listed "[i]mposition of penalties for commission of a crime while armed, in addition to the penalty for the crime" as one of the specific purposes of the bill. H.R. 8754, "To Control Sale of Firearms in the District of Columbia," S.Rep. No. 575, 72d Cong., 1st Sess., at 2 (1932). As we said in *Thomas v. United States*, 602 A.2d 647, 650 (D.C. 1992), "[t]he primary purpose of [§ 22–4502(a) ] is to authorize imposition of an additional penalty for committing certain underlying offenses while armed with or having readily available a dangerous weapon." Subsections (a)(1) and (2) also "serve[ ] the additional purposes of requiring more severe treatment of recidivists and those who wield firearms," as reflected in the required five-year mandatory-minimum sentences. *Id.* at 651 (citing *McCall v. United States*, 449 A.2d 1095, 1096 (D.C. 1982)). Thus, section 2 of P.L. No. 275 was broad in scope.

In contrast to D.C.Code § 22–4502(a), D.C.Code § 22–4504(a), which contains the words "on or about their person," is a substantive criminal provision.[3] *See Parks*

---

**3.** D.C.Code § 22–4504 provides:

(a) No person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed. Whoever violates this section shall be punished as provided in § 22–4515, except that:

(1) A person who violates this section by carrying a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon, in a place other than the person's dwelling place, place of business, or on other land possessed by the person, shall be fined not more than $5,000 or imprisoned for not more than 5 years, or both; or

(2) If the violation of this section occurs after a person has been convicted in the District of Columbia of a violation of this section or of a felony, either in the District of Columbia or another jurisdiction, the person shall be fined not more than $10,000 or imprisoned for not more than 10 years, or both.

(a–1) Except as otherwise permitted by law, no person shall carry within the District of Columbia a rifle or shotgun. A person who violates this subsection shall be subject to the criminal penalties set forth in subsection (a)(1) and (2) of this section.

(b) No person shall within the District of Columbia possess a pistol, machine gun, shotgun, rifle, or any other firearm or imitation firearm while committing a crime of violence or dangerous crime as defined in § 22–4501. Upon conviction of a violation

*v. United States,* 627 A.2d 1, 10 (D.C.1993). Section 22–4504(a) appeared as section 4 of P.L. No. 275, the same law which contained what is now § 22–4502; it specified: "No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon." 72 P.L. No. 275, 47 Stat. 651, July 8, 1932. Congress chose to use the words "on or about" in section 4, rather than the term "armed with or having readily available" which appeared in section 2 of P.L. No. 275. Thus, Congress must have seen a distinction between the sentence enhancement provision and the substantive criminal provision governing carrying a concealed weapon. Indeed the substantive criminal provision reflected a narrow legislative purpose to license persons carrying a pistol and to prohibit a person from carrying a pistol without a license. *See* S.REP. No. 575, at 2. It was codified as a separate provision, and when the Council decided in 1989 to create a new substantive provision pertaining to the possession of a firearm during a crime of violence or dangerous crime, with a five-year mandatory-minimum penalty, it added the new substantive provision to the existing substantive section (§ 22–4504), rather than to § 22–4502, which contained the sentence enhancement provision. *See Freeman v. United States,* 600 A.2d 1070, 1072 (D.C. 1991); *see also Johnson, supra,* 686 A.2d at 207 n. 9; COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, Report on Bill 8–185, The "Law Enforcement Amendment Act of 1989," December 4, 1989.

In our previous cases, we have noted that § 22–4502 "is very broad" and "employs a complex sentencing scheme that reflects its multiple purposes," and that § 22–4504 "does not address the same concerns underlying the enhancement provision of [§ 22–4502]," *Thomas v. United States,* 602 A.2d 647, 651 (D.C.1992). In addition, we have resisted using certain terms interchangeably that are required or that may be significant in the interpretation of §§ 22–4502 and 22–4504. *See Jamison v. United States,* 670 A.2d 373, 374–75 (D.C.1996) ("readily available" and "actual use"); *Morton v. United States,* 620 A.2d 1338, 1341 (D.C.1993) ("armed with," "within reach," and "readily available"); *Halicki v. United States,* 614 A.2d 499, 503, n. 9 (D.C.1992) ("carrying on or about the person" and "possession"). Given Congress's apparently deliberate use of different terms in enacting provisions now codified as § 22–4502(a) ("armed with or readily available") and § 22–4504(a) ("on or about the person"), the complexity of the sentencing enhancement statute, the different purposes of §§ 22–4502(a) and 22–4504(a), and our past reluctance to use certain key terms interchangeably in deciding cases under these statutes, we decline Mr. Clyburn's invitation to hold that " 'carrying on or about' and 'armed with or readily available' are equivalent concepts." Rather, we believe that the better approach in interpreting the sentencing enhancement provision within the factual context of Mr. Clyburn's PWIDWA case, is to determine first whether any of our existing PWIDWA case law controls his case.

■ Second, we conclude that under D.C.Code § 22–4502(a), "having readily

of this subsection, the person may be sentenced to imprisonment for a term not to exceed 15 years and shall be sentenced to imprisonment for a mandatory-minimum term of not less than 5 years and shall not be released on parole, or granted probation or suspension of sentence, prior to serving the mandatory-minimum sentence.

available" means in close proximity or easily accessible during the commission of the underlying PWID offense, as evidenced by lay or expert testimony (and reasonable inferences) describing the distance between the appellant and the firearm, and the ease with which the appellant can reach the firearm during the commission of the offense.

Our PWIDWA case law is sparse. In *Guishard v. United States*, 669 A.2d 1306, 1310 (D.C.1995), a case concerning a PWIDWA conviction, undercover officers purchased crack cocaine in appellant's bedroom; during the transaction, appellant took something from a bedroom dresser, and later, the police retrieved a loaded pistol from the dresser. We affirmed the imposition of the sentence enhancement under D.C.Code § 22–3202 (now § 22–4502). *Id.* at 1318. We determined that our decision in *Morton, supra,* "compel[led] us to hold that an operable pistol in a dresser drawer, just a few feet away from ... appellants as they jointly engaged in a series of drug transactions, meets the definition of 'readily available.'" *Id.*

The government's proffer at a guilty plea hearing in *Morton, supra,* showed that appellant and his codefendant were in the living room of an apartment when police arrived with a search warrant. Both were "within arm's length of a ... revolver lying atop a television set." In response to a question by the trial judge as to whether he had "ready access" to the revolver, appellant responded, "yes," but he "add[ed] that although the gun was not his, he had seen his codefendant place it there before the police entered, and [he] knew it was operable." *Morton,* 620 A.2d at 1339. We concluded that the trial judge did not abuse his discretion in denying Mr. Morton's motion to withdraw his guilty plea. Nevertheless, we determined that the evidence was not sufficient to sustain the mandatory-minimum enhancement penalty.

Mr. Morton contended that "the trial judge erred in imposing the mandatory-minimum sentence of five years under D.C.Code § 22–[4502](a)(1) because the facts proffered, even if sufficient to show that he had the gun readily available, could not have persuaded a reasonable trier of fact that he was 'armed with' the pistol." *Morton, supra,* 620 A.2d at 1341. The government responded in *Morton* "that when a gun is within immediate reach of the defendant and he knows it is there, and when in addition his possession of drugs for distribution suggests that he has particular need for the protection of a gun, it is reasonable to view him as 'armed with' the gun while committing the underlying narcotics offense." *Id.* We thought that "[t]he government's argument ha[d] some force because it is certainly true that a gun within arm's reach of the defendant may be as accessible to immediate use as a gun, say stuffed in his pocket or strapped to his leg," and consequently, "we d[id] not reject the government's argument that in some circumstances 'armed with' under § 22–[4502](a)(1), even for purposes of the mandatory sentence, may reasonably include a firearm within arm's reach of the defendant." In construing the enhancement provision, we said: "On its face the phrase 'armed with' is ambiguous on the precise issue of whether it may include a weapon within arm's reach of the defendant, but not on his person." *Id.* at 1341. Nevertheless, we "h[e]ld that on the facts of [the Morton] case a jury could not reasonably have found appellant to be 'armed with' the pistol and hence subject to the mandatory-minimum." *Id.* Significantly, our analysis, as indicated by our illustrations, obviously signaled a narrow meaning of "armed with or having readily available" regarding the enhancement penalty, inter-

preting it as meaning the gun must be in close proximity to the defendant or easy to reach.

Years after *Morton* and *Guishard,* we decided *Cox v. United States,* 999 A.2d 63 (D.C.2010), another case involving a PWIDWA conviction. There, appellant was seated in a car behind the front seat passenger. *Id.* at 66. Ziplocks of crack cocaine were found on his person and a revolver was "lying on the floor behind the lever used to move the seat forward or backward;" the handle of the revolver "was facing the rear of the car, where [appellant] had been seated." *Id.* at 66–67. Mr. Clyburn relies on *Cox* in his reply brief to refute the government's assertion concerning the plain meaning of D.C.Code § 22–4502(a). But, *Cox* does not control Mr. Clyburn's case for two reasons. First, *Cox* raised aspects of a constructive possession question, namely whether "knowledge and intent [could] be inferred from the mere fact that [Mr. Cox] was near [the pistol,]" and second, *Cox* focused on whether the trial court erred in responding to a jury note. *Id.* at 69, 70. We concluded that "circumstantial evidence in addition to the pistol's location supported the inference that Cox constructively possessed it," *id.* at 69, but that the trial judge plainly erred in re-instructing the jury on the meaning of "readily available," because the jury's "verdict implie[d] that it found Cox guilty of PWID 'while armed' only because it labored under the misunderstanding, fostered by the trial court's erroneous reply to its inquiry, that the pistol could be 'readily available' to Cox even if he did not constructively possess it." *Id.* at 71. Those issues are different from the one presented by Mr. Clyburn's case.

■ Therefore, in resolving the precise issue before us in Mr. Clyburn's case— whether the government presented sufficient evidence to prove beyond a reason-

able doubt that Mr. Clyburn was "armed with" or had "readily available" a firearm while committing the underlying drug offense (possession with intent to distribute cocaine)—we view *Morton* and *Guishard* as our controlling precedents. Those precedents indicate that "having readily available" within the meaning of D.C.Code § 22–4502(a), while committing the PWID offense, requires that the firearm (here the assault rifle) be in close proximity to or easily accessible by the appellant. Indeed, "readily available" under the enhancement statute does not mean that it is sufficient if the firearm, or assault rifle, is located anywhere in an apartment where there is evidence of drug possession with intent to distribute, so long as there is some proof that appellant resides there or has some connection with the apartment. That is not enough under *Morton* and *Guishard.* Rather, the government's proof must show appellant's easy access or close proximity to the firearm (the assault rifle in this case).

Here, the government's proof revealed that the assault rifle was located in the bedroom beyond the living room where drug money was located and beyond the dining/hallway area. The record does not specify the distance between the living room and the bedroom, or the ease of the path from the living room to the bedroom and the assault rifle. In short, the government failed to produce evidence showing beyond a reasonable doubt Mr. Clyburn's close proximity or easy access to the assault rifle during the PWID offense.

We disagree with our dissenting colleague that this record permits us as appellate judges to conclude that the distance between the rifle, cocaine and Mr. Clyburn "was only a matter of several steps." Under the circumstances reflected in the record before us, and under *Morton* and *Guishard,* we cannot say that reasonable

jurors could find that the government proved beyond a reasonable doubt that Mr. Clyburn committed PWID while armed with the rifle because it was "readily available" to him during the commission of the PWID offense. Consequently, we hold that the government's proof was insufficient to sustain the enhancement penalty in D.C.Code § 22–4502(a); the government's evidence only proved beyond a reasonable doubt that Mr. Clyburn was guilty of possession with intent to distribute cocaine (PWID).

Accordingly, for the foregoing reasons, we remand this case to the trial court with instructions to enter judgment on the lesser-included offense of (unarmed) PWID, and to re-sentence him.

*So ordered.*

GLICKMAN, Associate Judge, dissenting:

I respectfully dissent from my colleagues' conclusion that the evidence in this case was insufficient to sustain the jury's finding that appellant committed a dangerous crime "when armed with or having readily available" a firearm within the meaning of D.C.Code § 22–4502(a). In my view, the jury fairly could find that the assault rifle hidden under appellant's bed was "readily available" to him while he was in his apartment. I therefore would affirm appellant's conviction for possession with intent to distribute (PWID) while armed.

Under our case law, the statutory term "readily available" has two components—ease of physical access and constructive possession.[1] To prove that a firearm was readily available to the defendant when he was committing his offense, the government must prove both that the weapon was close enough to be easily accessible to the defendant and that he constructively possessed it.[2]

Appellant has conceded the sufficiency of the evidence that he constructively possessed the rifle while he was engaged in his drug distribution activity.[3] To prove constructive possession, the government was required to show that appellant knew where the rifle was located and "had not merely the ability, but also the intent to

1. *See, e.g., Cox v. United States,* 999 A.2d 63, 69 (D.C.2010) ("[P]roximity and ease of access alone do not suffice to prove ready availability: [W]e have construed the statute to mean that in order to have a weapon readily available, one must at a minimum have constructive possession of it.") (internal quotation marks omitted); *id.* at 71 ("[A]lthough 'readily available' and 'easily accessible' are synonymous in common parlance, as used in the statute, 'readily available' is a term of art that incorporates the requirements of constructive possession (one element of which is knowledge on the defendant's part).") (footnote omitted); *Thomas v. United States,* 602 A.2d 647, 654 (D.C.1992) ("Proof that one had possession of a firearm does not necessarily establish that the firearm was readily available.").

2. A defendant who had actual physical possession of the firearm when he committed the offense, rather than constructive possession, would be subject to the § 22–4502(a) sentencing enhancement because he actually was "armed with" the weapon. *See Johnson v. United States,* 686 A.2d 200, 205 (D.C.1996) (holding that " 'armed with' under [the prior codification of D.C.Code § 22–4502(a)] means actual physical possession of the pistol or other firearm").

3. *See* Brief for Appellant at 13 ("At most, the government case at trial established that Mr. Clyburn contemporaneously possessed both the firearm and the cocaine, but contemporaneous possession is not sufficient to prove beyond a reasonable doubt that Mr. Clyburn possessed the cocaine while armed."); Brief for Appellee at 16 ("Appellant does not dispute on appeal the sufficiency of the evidence that he constructively possessed the rifle.").

exercise dominion or control over it." [4] The evidence showed that appellant was taken into custody in the living room of the one-bedroom apartment from which he emerged to sell cocaine to an undercover police officer, and to which he then returned. Police discovered the rifle on the floor under the bed in the bedroom. In addition to the rifle, the bedroom contained identification cards bearing appellant's name as well as disposable gloves, a quantity of zip-lock bags, and ammunition for the rifle in the closet. In either the dining room or the living room, the police found mail (including a Comcast bill) addressed to appellant at that address, cocaine, drug paraphernalia, and the prerecorded funds that appellant received in the undercover buy. From the foregoing evidence, the jury reasonably could infer that appellant occupied the apartment, knew the rifle was under the bed in the bedroom, and had both the ability and the intent to exercise dominion and control over it—in other words, that he construc-

tively possessed the rifle. [5] "In general, 'a jury is entitled to infer that a person exercises constructive possession over items found in his home'" [6]; "[i]t is usually easy to establish that the owner of a car or the occupant of a living area has constructive possession of illicit items recovered from these places." [7]

The disputed issue in this case is not whether the government proved constructive possession, but rather whether it proved the first, proximity component of ready availability: whether the rifle was easily accessible to appellant when he possessed the cocaine with the intent to distribute it. In my view, the evidence of proximity in this case was sufficient. Although the record does not reveal the exact distances between the rifle and either the cocaine or appellant at the time of his arrest, it was only a matter of several steps in either case, and until appellant was arrested, nothing impeded his ability

---

4. *Cox,* 999 A.2d at 69.

5. *See, e.g., Moore v. United States,* 927 A.2d 1040, 1050–51 (D.C.2007) (holding there was sufficient evidence that the defendant constructively possessed the drugs and gun found in an apartment bedroom because the defendant was "in the immediate vicinity" of the apartment when the contraband was discovered, had a key to the apartment, admitted living there, had been photographed there, his wife was the lessee, and the contraband was found in the apartment's "only bedroom, lying in plain view next to [the defendant's] personal papers"); *Brown v. United States,* 691 A.2d 1167, 1168 (D.C.1997) (holding evidence sufficient to prove that appellant, while on the sidewalk in front of his house, constructively possessed the drugs and gun found in his upstairs bedroom); *Guishard v. United States,* 669 A.2d 1306, 1313 (D.C.1995) (holding evidence sufficient to prove appellants constructively possessed gun located "just a few steps away" from them in a dresser in a small bedroom of an apartment in which each appellant was at least a part-time resident); *Davis v. United States,* 623 A.2d 601, 603–04

(D.C.1993) (holding evidence sufficient to prove defendant's constructive possession of drugs found in bedroom with her personal papers and effects).

6. *Moore,* 927 A.2d at 1050 (quoting *United States v. Dykes,* 365 U.S.App.D.C. 381, 385, 406 F.3d 717, 721 (2005) (holding that there was sufficient evidence that the defendant lived in the apartment bedroom where police found drugs, because, *inter alia,* the defendant's name was on the apartment lease and his personal papers were found inside a bedroom cabinet, and therefore the jury could infer that the defendant constructively possessed the drugs)).

7. *Taylor v. United States,* 662 A.2d 1368, 1373 (D.C.1995) (holding that there was insufficient evidence that the defendant constructively possessed guns found hidden from view under the right rear seat of the car he was found sitting in because "the government presented no evidence connecting [the defendant] to the car" or otherwise permitting his knowledge of the weapons to be inferred).

to walk into the bedroom and retrieve the rifle in a few seconds. The evidence thus permitted a finding that appellant had easy access to the firearm.

Appellant argues that the phrase "when armed with or having readily available" in the enhancement statute should be construed to mean the same thing as the phrase "on or about the person" in the concealed weapons statute.[8] Such an equivalence would imply that a firearm is not "readily available" unless it is actually at hand—" 'in such proximity to the person as to be convenient of access *and within reach.*' " [9] I join my colleagues in rejecting this equivalence. In ordinary usage, an item is "readily available" if it is "accessible or may be obtained" with "fairly quick efficiency" or "reasonably fast" [10]; to satisfy that condition, it need not be within arm's reach. In other words, the item must be *easily,* not *immediately,* accessible.[11] This construction is consistent with our case law and the relevant legislative history, as the majority opinion demonstrates.

Having rejected appellant's contention that "readily available" is no broader than "on or about the person," the majority nonetheless agrees with appellant that the assault rifle was not readily available to him when he was committing the offense of PWID in his apartment. I have difficulty seeing why not. The government did not need to present a floor plan of the apartment or detailed measurements to establish that it would have been as easy for appellant to get the rifle in his bedroom as it was for the police to do so. My colleagues do not explain why that was not easy enough to satisfy the enhancement statute. Certainly, neither *Guishard* [12] nor *Morton,* [13] which my colleagues view as the "controlling precedents" on this point, requires a showing of closer proximity than existed here.[14]

---

**8.** D.C.Code § 22–4504(a) (providing that "[n]o person shall carry within the District of Columbia either openly or concealed *on or about their person,* a pistol, without a license . . . or any deadly or dangerous weapon capable of being so concealed").

**9.** *See, e.g., White v. United States,* 714 A.2d 115, 119 (D.C.1998) (emphasis added) (quoting *Brown v. United States,* 58 App.D.C. 311, 312, 30 F.2d 474, 475 (1929)).

**10.** *See, e.g.,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 150 (definition of "available"), 1889 (definition of "readily") (2002 ed.).

**11.** *See Cox,* 999 A.2d at 71 (noting that " 'readily available' and 'easily accessible' are synonymous in common parlance"). To be sure, because " 'readily available' is a term of art that incorporates the requirements of constructive possession" in addition to easy accessibility, *id.,* it would be incorrect to say that the statutory term is completely synonymous with the term as it is used in ordinary discourse. But when we are setting aside the knowledge and intent elements of constructive possession and focusing on the question of proximity alone, the dictionary definition of the term "readily available" is a useful guide. *See, e.g., Jeffrey v. United States,* 892 A.2d 1122, 1128 (D.C.2006) ("[I]t is axiomatic that the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.") (internal quotation marks omitted).

**12.** *Guishard v. United States,* 669 A.2d 1306 (D.C.1995).

**13.** *Morton v. United States,* 620 A.2d 1338 (D.C.1993).

**14.** While *Guishard* and *Morton* hold that the proximity requirement of ready availability *is met* when a firearm is "within [the defendant's] immediate reach," *Morton,* 620 A.2d at 1340, or is accessible "just a few feet away," *Guishard,* 669 A.2d at 1314, nothing in either case suggests that the firearm *must* be so close in order to be "readily available." (The majority's reliance on *Morton's* discussion of the term "armed with" is misplaced. As the *Morton* court said, the enhancement statute makes "a deliberate and important" distinction between being "armed with" a firearm and having it "readily available"

I conclude that the term "readily available" has a distinct meaning. It denotes more than constructive possession; that a person constructively possesses an item does not necessarily mean he has easy access to it. But "readily available" does not signify only what "on or about the person" does, for an item may be easily accessible without being so close as to be within grasping range. Beyond that—beyond saying that "readily available" has the two components of easy accessibility and constructive possession—I doubt that it is possible to formulate a more precise definition of the term, and this case does not require us to try to do so. The jury reasonably could find that the assault rifle belonged to appellant, and that he could have retrieved it quickly and easily while he was in his apartment committing the offense of PWID. I therefore would affirm his conviction of PWID while armed.

when engaging in dangerous or violent criminal activity. 620 A.2d at 1341. The definition of the former term does not elucidate the definition of the latter.)