# District of Columbia
# Court of Appeals

**No. 15-CF-151**

NATHANIEL COUSART,

Appellant,

FILED

AUG – 4 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

**CF3-16472-13**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: GLICKMAN and FISHER, *Associate Judges*; and STEADMAN, *Senior Judge*.

# J U D G M E N T

This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment on appeal is affirmed.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: August 4, 2016.

Opinion by Senior Judge John Steadman.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CF-151

NATHANIEL COUSART, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 8/4/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF3-16472-13)

(Hon. Patricia A. Broderick, Trial Judge)

(Submitted March 24, 2016      Decided August 4, 2016)

*Matthew J. Peed* was on the brief for appellant.

*Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, *John P. Marston*, and *Danny Lam Nguyen*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and FISHER, *Associate Judges*, and STEADMAN, *Senior Judge*.

STEADMAN, *Senior Judge*: Nathaniel Cousart appeals his convictions by a jury of aggravated assault while armed (AAWA)[1] and assault with a dangerous

---

[1] D.C. Code §§ 22-404.01, -4502 (2012 Repl.).

weapon (ADW).[2]  He argues that the trial court committed plain error in its instructions on both counts.  We find no plain error.  However, we publish this opinion because in instructing on the AAWA count, the trial court closely followed the model instructions in Criminal Jury Instructions for the District of Columbia (5th ed. rev. 2015),[3] but yet, in doing so, left open the possibility of argument for reversal that appellant makes here and others may make in future cases.[4]

## I. The Facts

On September 13, 2013, when he went into an alley to urinate, Darfus Barrett was stabbed in the neck, shoulder, and back, inflicting serious injury.  Mr. Barrett testified at trial that it was appellant who followed him into the alley and stabbed him with a knife.  Mr. Barrett and appellant were acquaintances but not friends and did not "get along"; they had had a verbal set-to the previous day. There was no other witness to this stabbing.

---

[2]  D.C. Code § 22-402 (2012 Repl.).  He was also convicted of carrying a dangerous weapon in violation of D.C. Code § 22-4504 (2012 Repl.).  He does not challenge that conviction on appeal, except to the extent that it may have been affected by the challenged AAWA instruction.  See note 8, *infra.*

[3]  In this opinion, all references to a jury instruction are to this volume.

[4]  As indicated *infra*, any difficulty can be readily forestalled by rather minor modification of the model instruction.  See note 10 and note 6.

After the attack, Mr. Barrett fled and ran south on North Capitol Street, hollering for help, and appellant followed him with the knife in his hand. As Mr. Barrett approached the apartment complex at 1200 North Capitol Street, Trever Edelin, a security guard at the complex, emerged to help. When Mr. Edelin asked who had stabbed him, Mr. Barrett pointed toward the crowd of onlookers and said, "blue shirt." Appellant, who was wearing a blue shirt, began walking away. Mr. Edelin pursued appellant while yelling "blue shirt" and "stop." Appellant then pulled out a knife, turned and took a step towards Mr. Edelin "in a threatening manner." Mr. Edelin saw blood on appellant's shirt and face when he approached appellant. Appellant was not directly pointing the knife at him but held the knife "toward his waistline, back toward his body," and he "had it shielded with his body." Fearing for his life, Mr. Edelin drew his gun. Seeing the gun, appellant turned around, walked a few steps, and then threw the knife down a sewer. Mr. Edelin eventually succeeded in restraining and handcuffing appellant with the aid of a fellow officer from the complex.[5]

---

[5] The defense presented no evidence of its own, but challenged the testimony of both Mr. Barrett and Mr. Edelin in various ways, including the extensive criminal record and high intoxication of Mr. Barrett and Mr. Edelin's allegedly engaging in activities and using excessive force beyond his authority as a special police officer and covering his tracks with his testimony. It also challenged whether the knife recovered from the sewer was in fact an item possessed by the appellant.

## II. The AAWA Instruction

The charge of AAWA was based on the stabbing of Mr. Barrett in the alley.

The trial court gave the jury the following instruction:

> The elements of the crime of aggravated assault while armed, each of which the Government must prove beyond a reasonable doubt are that, one, Nathaniel Cousart caused serious bodily injury to Darfus Barrett; and, two, Nathaniel Cousart either, A, intended to cause serious bodily injury to Darfus Barrett, or, B, knew that serious bodily injury to Darfus Barrett would result from his conduct, or, C, was aware that his conduct created an extreme risk of serious bodily injury to Darfus Barrett, but engaged in that conduct nonetheless.

> Serious bodily injury is an injury that involves unconsciousness, extreme physical pain, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, organ or mental facility, or a substantial risk of death.

> At the time of the offense, Nathaniel Cousart was armed with or had readily available a knife. A dangerous weapon is any object likely to produce death or great bodily injury by the use made of it. In deciding whether the defendant was armed with or had readily available a dangerous weapon, you may consider all the circumstances surrounding its possession and use.

> Armed with means the actual physical possession of the weapon. Readily available means that the dangerous weapon was within easy access of Nathaniel Cousart, he knew it was there, and he had both the ability and the intent to exercise control over it.

In this instruction, the trial court in the first two paragraphs defined the offense of aggravated assault by following virtually verbatim Instruction 4.103 (Aggravated Assault). Then, in defining the "while armed" element of the offense, the trial court in the next two paragraphs followed closely Instruction 8.101 (B) (Armed With or Had "Readily Available" Any Weapon).[6]

In challenging this instruction for the first time on appeal, appellant focuses on the first sentence in the third paragraph: "At the time of the offense, Nathaniel Cousart was armed with or had readily available a knife." Appellant argues that this instruction was an improper partial direct verdict, in that it instructed the jury that Cousart was in fact armed with a knife, a fundamental and disputed factual issue. *See Minor v. United States*, 475 A.2d 414 (D.C. 1984).

---

[6] Strictly speaking, the instruction does not provide that the instruction should state what is alleged to be the dangerous weapon where the item is not one of the per se listed dangerous weapons. See the next to last paragraph of this part II *infra*, setting forth the model instruction. In naming the specific weapon, the instruction is rendered a bit obscure as to what exactly is the element that the jury must determine; viz., that the defendant was armed with or had readily available a "dangerous weapon." But even following verbatim the model instruction, the initial sentence standing alone, without some modification or clarification, could be subject to an attack similar to that made here as stating as a fact that the defendant had a "dangerous weapon," or, in the case of a per se dangerous weapon, stating as a fact that the defendant did possess the weapon.

Appellant, however, failed to object at trial and, thus, we review for plain error. *Johnson v. United States*, 520 U.S. 461, 466-67 (1999) (citing *United States v. Olano*, 507 U.S. 725, 732 (1997)). Under the plain error standard, an appellant "must show (1) that there was a deviation from a legal rule, (2) that this error was clear or obvious, rather than subject to reasonable dispute, and (3) that this error affected the defendant's substantial rights." *In re Taylor*, 73 A.3d 85, 96 (D.C. 2013) (internal quotation marks and citations omitted). Even if these three criteria are met, reversal should occur only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

The claimed error here cannot meet this standard for reversal. An instruction that follows without objection the model criminal instruction would constitute an error that is "plain" only in an unusual case.[7] Indeed, by using the words "[i]n deciding whether," the instruction itself goes on to state that it is for the jury to decide the armed element. In this case, the trial judge had also

---

[7] Although technically unofficial, the Criminal Jury Instructions for the District of Columbia, commonly called the Red Book, are contained in one loose-leaf volume that is regularly updated and widely used. The instructions and accompanying extensive comments are prepared by a committee consisting of volunteer judges and experienced practitioners under the overall supervision of a law professor. At present, the volume is published by LexisNexis.

unequivocally instructed the jury that it was "the sole judge[] of the facts," *see* Instruction 2.102, and if the judge's reference "to the evidence [did] not coincide with [the jury's] own recollection of the evidence," then it was the jury's "recollection which should control during [its] deliberations." *See* Instruction 2.103. Furthermore, in its instructions on the other charges, ADW and CDW, the trial court made no mention of a knife and unambiguously stated that the government must prove that the appellant carried or committed the act with a dangerous weapon. It would seem odd for a jury to conclude that while it had the responsibility for determining whether appellant had a dangerous weapon, the knife, in order to convict for those offenses, it need make no such finding for AAWA.[8] Viewing the challenged sentence in the context of the instructions as a whole, we do not think there is any reasonable probability that the jury took the sentence as removing from the jury the determination whether appellant stabbed Mr. Barrett and tried to attack Mr. Edelin with a knife.

Appellant suggests that a reversal here is compelled by our holding in *Minor*, *supra*, 475 A.2d at 416. In that case, the appellants were charged with larceny and receiving stolen property, which required that the goods have a value

---

[8] Appellant suggests that the AAWA instruction about the knife may have carried over to the jury instructions on the other counts, but each court received its own separate instruction and any carry-over seems unlikely.

in excess of $100. The trial judge, without objection, instructed the jury that "as a matter of law, I find that the property had such value" and again, "as a matter of law, I find that the value is in excess of $100.00." *Id.* at 415. Nor did the court "further charge the jury so as to put the fact finding responsibility regarding value back in the jury's hands." *Id.* On appeal, we held that these instructions constituted a partial directed verdict and rejected any application of harmless error. In doing so, we stressed the narrowness of the decision, dealing with "statements from the bench during instructions which are unambiguously directed verdicts on an essential element of the crime." *Id.* at 416. They were not "a comment by the court on the evidence" nor "an instructional error." *Id.*

We do not think that the situation before us is controlled by *Minor*. In *Minor*, the court explicitly removed the value element from the jury's consideration "as a matter of law."[9] In our case, the trial court's statement appeared in the midst of instructions of the elements of the offense and related to a fact – possessing a knife – that was not, in itself, an essential element but depended

---

[9] Likewise, in *Wheeler v. United States*, 930 A.2d 232, 240, 249 (D.C. 2007), also relied on by appellant, the trial court's instruction that "the absence of any fingerprint evidence, standing alone, does not constitute reasonable doubt as to the firearm charges here" not only was explicit and unambiguous but also infringed upon the always sensitive reasonable doubt standard within the jury's province. As the *Wheeler* court put it, "the jury was told that it *could not* acquit if its doubt was based solely on the lack of fingerprint evidence." *Id.* at 243 (emphasis in original).

on a jury finding of its dangerousness by its use. Unlike in *Minor*, the trial court's instructions as a whole stressed the jury's role as the sole fact finder. Finally, *Minor* predated the seminal decision in *United States v. Olano*, *supra*, setting forth the controlling analysis for plain error review, and may be in conflict with the later Supreme Court decision in *Johnson v. United States*, *supra*. In *Johnson*, the Court held that a trial court's improper determination of an element of an offense that was properly for a jury to determine was subject to plain error review pursuant to *Olano*. It is difficult to see any meaningful distinction between a partial directed verdict on an element of an offense and a trial court's improper determination of that very element.

Nonetheless, appellant's argument is not frivolous. The standard jury instruction 8.101 (B) reads as follows:

> At the time of the offense, [name of defendant] was armed with, or had readily available, a [firearm] [imitation firearm] [sawed-off shotgun] [shotgun] [machine gun] [rifle] [dirk] [bowie knife] [butcher knife] [switchblade knife] [razor] [black jack] [billy] [metallic or other false knuckles] [dangerous weapon. A dangerous weapon is any object likely to produce death or great bodily injury by the use made of it. In deciding whether the defendant was armed with or had readily available a dangerous weapon, you may consider all of the circumstances surrounding its possession and use.]

When this instruction is simply tacked on to a prior instruction without a clear indication that it is a statement of what the jury must find and not an assertion that the defendant did in fact carry some particular item, it could be subject to misinterpretation. Care should be taken in fashioning instructions to avoid any such confusion. *See, e.g.*, *Jenkins v. United States*, 877 A.2d 1062, 1067 n.5 (D.C. 2005) (adding the word "Third" at the beginning of the first sentence).[10]

## III. ADW

The ADW charge was based on appellant's interaction with Mr. Edelin. As relevant here, the trial court gave the following instruction:

> [T]he elements of assault with a dangerous weapon, each of which the Government must prove beyond a reasonable doubt, are that, one, Nathaniel Cousart, with force or violence, injured or tried to injure Trever Edelin; two, he did so voluntarily, on purpose, and not by mistake or accident; and, three, Nathaniel Cousart committed the act with a dangerous weapon.

---

[10] If, in modification of the standard instruction, the weapon (other than one per se dangerous) is to be specified, the first sentence should be expanded and clarified to precisely state the element of the offense, for example, by adding the phrase "as a dangerous weapon." That is to say, the jury must find both that the defendant possessed the alleged named weapon and that it was a "dangerous weapon" as defined in the next sentence of the standard instruction. See also note 6, *supra*, with respect to the problem in simply naming the specific weapon alleged to be dangerous, unless it is one that is per se dangerous.

With one exception, this instruction is virtually identical with Option A (Attempted-Battery Assault) of Instruction 4.101 (Assault with a Dangerous Weapon). No instruction was given on Option B (Intent-to-Frighten Assault).[11] Appellant makes two arguments based on this instruction.

**A.**

First, appellant points out that the trial court omitted the third element of ADW contained in the model instruction; namely, that "[a]t the time, [name of defendant] had the apparent ability to injure [name of complainant]." Since appellant failed to object to this omission plain error review again applies. *See Mobley v. United States*, 101 A.3d 406, 421 (D.C. 2014) (citing *Neder v. United States*, 527 U.S. 1 (1999)). Assuming that appellant is correct that "apparent ability to injure" is an essential element of ADW Option A, *see Anthony v. United States*, 361 A.2d 202, 207 (D.C. 1976),[12] appellant fails to meet the third prong of

---

[11] Curiously, however, the trial court included, in a subsequent definition of injury from the standard instruction, the statement that "[t]he government must prove a threatening act. Mere words are not sufficient." This instruction appears to pertain to Option B, not A.

[12] In the ADW Option A, this third element is bracketed, suggesting that its use may be optional. No such brackets appear in Option B nor in the definition of simple assault in Instruction 4.100. The commentary does not appear to contain

(continued…)

plain error review. "In order to show that the non-structural error in this case affected his substantial rights, [appellant] must show a reasonable probability that the [omission of the third element of ADW in the jury instruction] had a prejudicial effect on the outcome of the trial." *Kidd v. United States*, 940 A.2d 118, 127 (D.C. 2007) (brackets substituting facts of present case).

On the record before us, the most reasonable conclusion that a jury would reach, if instructed on the point, would be that appellant had "at the time the apparent ability to injure" when he turned and approached Mr. Edelin with a knife. Indeed, his manner was "menacing" or "threatening" enough to evoke fear in Mr. Edelin, prompting him to pull out his gun. The fact that a few feet may have still separated Mr. Edelin from the appellant hardly detracted from his "present ability" to do serious bodily harm if undeterred. An attempted-battery assault conviction does not require actual physical contact. *See Buchanan v. United States*, 32 A.3d 990, 1003 (D.C. 2011) (Ruiz., J. concurring) and cases cited. Therefore, despite

---

(…continued)
any explanation for the brackets. It may be that the element could be omitted if the assault actually resulted in an injury, but no brackets appear in the comparable provision in Instruction 4.100 on simple attempted-battery assault. In any event, the government in its brief concedes that the instruction should have been given here. *Anthony* used the phrase "apparent present ability" but the 5th edition eliminated the word "present" as redundant to "at the time," citing *Long v. United States*, 946 A.2d 87, 99 (D.C. 2007).

the trial court's omission of this element, appellant has not persuaded us that a reasonable probability exists that the outcome of the case would have differed if the missing element had been included in the charge to the jury.

**B**.

Second, appellant argues that the evidence was insufficient to support a conviction on attempted-battery assault and, even if sufficient to support a conviction on intent-to-frighten assault, the failure to instruct on that ground bars any ADW conviction.

We review claims of insufficiency under the familiar and oft-repeated standard. This court "view[s] the evidence in the light most favorable to the government, giving full play to the right of the [finder of fact] to determine credibility, weigh the evidence, and draw justifiable inferences of fact[.]" *Crockett v. District of Columbia*, 95 A.3d 601, 606 (D.C. 2014) (quoting *Gibson v. United States*, 792 A.2d 1059, 1065 (D.C. 2002)). "We can reverse for lack of sufficient evidence only if we are convinced that 'no reasonable mind could fairly have found . . . (appellant) guilty'" beyond a reasonable doubt. *Christian v. United States*, 394 A.2d 1, 33 (D.C. 1978).

Here, Mr. Edelin testified that appellant pulled out a knife, turned around and took one step towards him "in a threatening manner." Although appellant had not yet pointed the knife directly at Mr. Edelin, appellant only stopped his approach when Mr. Edelin, fearing for his life, pulled out his gun. His willingness to use his knife to inflict injury had been evidenced in what had occurred shortly before in his attack on Mr. Barrett. While the issue is a close one, we cannot say that no reasonable mind could have found beyond a reasonable doubt that appellant went toward Mr. Edelin in an attempt to injure him and not simply to induce fear. Applying the standard for review of sufficiency claims, we conclude that the evidence was sufficient to support the jury's conviction under the instruction given by the trial court.[13]

The judgment appealed from is

*Affirmed.*

---

[13] Hence, we need not reach appellant's argument on the effect of the failure to instruct on intent-to-frighten assault.