# District of Columbia
# Court of Appeals

**Nos. 14-CF-1148 and 14-CF-1203**

LAMONT L. BUSKEY and KEITH A. SIMMS,

Appellants,

v.

UNITED STATES,

Appellee.

FILED

NOV **10** 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

CF3-22133-13 &
CF3-16677-13

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE:  GLICKMAN and EASTERLY, *Associate Judges*; and REID, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel.  On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of the trial court is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: November 10, 2016.

Opinion by Senior Judge Inez Smith Reid.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

FILED 11/10/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Nos. 14-CF-1148 and 14-CF-1203

LAMONT L. BUSKEY AND KEITH A. SIMMS, APPELLANTS,

v.

UNITED STATES, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CF3-22133-13 and CF3-16677-13)

(Hon. John McCabe, Trial Judge)

(Argued March 2, 2016                          Decided November 10, 2016)

*Deborah A. Persico* for appellant Lamont L. Buskey.

*Margaret M. Cassidy* for appellant Keith A. Simms.

*Candice C. Wong*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman* and *Michelle Parikh*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*: These appeals arise from two robberies that took place in the Northwest quadrant of the District of Columbia in September 2013. Appellants Lamont L. Buskey and Keith A. Simms were indicted on multiple

felony charges relating to the robberies.[1] Following a jury trial, they were found guilty of all charges. On appeal, Mr. Buskey and Mr. Simms contend that the trial court (1) made several instructional errors relating to the CDW offense, co-conspirator liability, and aiding and abetting liability for "while armed" offenses; and (2) erred in responding to jury questions posed during deliberations, and by sending written responses instead of reconvening the jury and reading the responses aloud. For the reasons stated below, we affirm the judgments of the trial court.

## FACTUAL SUMMARY

### *The Government's Evidence*

---

[1] Mr. Buskey and Mr. Simms were charged with conspiracy to commit burglary, kidnapping, and robbery, in violation of D.C. Code § 22-1805a (2012 Repl.); second-degree burglary of the apartment building of Jennifer and Roxana Carranza, in violation of D.C. Code § 22-801 (b); kidnapping of Jennifer and Roxana Carranza, in violation of D.C. § 22-2001; robbery of Jennifer and Roxana Carranza, in violation of D.C. Code § 22-2801; first-degree burglary while armed of the home of Pedro Sanchez de Paz, Minor Camo, and Fausto Lopez, in violation of D.C. Code §§ 22-801 (a), -4502; kidnapping while armed of Pedro Sanchez de Paz, in violation of D.C. Code §§ 22-2001, -4502; robbery while armed of Pedro Sanchez de Paz and Minor Camo, in violation of D.C. Code §§ 22-2801, -4502; and carrying a dangerous weapon (CDW), in violation of D.C. Code § 22-4504 (a).

The record reveals that the first robbery took place on September 7, 2013. Complainants Roxana and Jennifer Carranza testified as follows. Mr. Buskey and Mr. Simms followed teenage sisters Roxana and Jennifer Carranza into their apartment building in the 3800 block of 14th Street Northwest. The men entered the elevator with the sisters, and indicated that they were going to the seventh floor. When the elevator reached the third floor, where the sisters lived, the men "block[ed] the door" and trapped them inside the elevator. The sisters tried to get out of the elevator, but both men "pushed [them] against the wall in the corner of the elevator." The sisters began to scream. Mr. Simms, the shorter man, stepped out of the elevator to ensure that nobody was there and then returned to the interior of the elevator. The elevator began moving to the seventh floor. Mr. Buskey, the taller of the two men, pulled out pepper spray, thrust it near Roxana's face, and said, "Give me your chains before I stab you." Jennifer noticed that the taller man had his hand in his pocket when he said, "Give me your chains or I'll stab you. I'll stab the sh*t out of you." Mr. Buskey and Mr. Simms snatched the sisters' gold necklaces, demanded their rings, and grabbed Roxana's bracelet. The elevator moved to the basement floor. A lady was standing in the basement; the shorter man spoke to her and she directed the men to the exit. Jennifer gave a similar account of the robbery during her testimony.

The government introduced corroborating surveillance video evidence showing Mr. Buskey and Mr. Simms approaching the building and following the Carranza sisters inside. The video depicted Mr. Simms stepping off the elevator on the basement level, Mr. Buskey running down the hallway, and both men leaving the building. Roxana made an in-court identification of Mr. Buskey. During re-cross examination, she was presented with a photo array and she identified one of the defendants as one of the perpetrators.[2]

The second robbery occurred on September 16, 2013. According to Mr. Sanchez de Paz, Mr. Buskey and Mr. Simms followed him into his house, located in the 3600 block of Warder Street Northwest (less than three quarters of a mile away from the Carranza sisters' building). When Mr. Sanchez de Paz tried to close the door, Mr. Buskey, with Mr. Simms's help, grabbed Mr. Sanchez de Paz's hands, forced them behind his back, pushed him into the house, and threw him to the ground as Mr. Buskey demanded money. Mr. Buskey held a knife to Mr. Sanchez de Paz's neck while Mr. Simms went through his pockets and took his cash, two cellphones, and keys; they kicked him in the back and asked for the location of his room. Hoping to get help, Mr. Sanchez de Paz directed them to the

---

[2] The record is not clear as to which defendant Roxanna identified.

basement room where his friends, Minor Camo and Fausto Lopez, lived. Mr. Buskey used the keys he had taken and opened the door to the basement unit while Mr. Simms held a knife to Mr. Sanchez de Paz's neck and restrained his arms behind his back.[3]

Mr. Camo testified that Mr. Buskey entered the room where Mr. Camo and Mr. Lopez lay sleeping. Mr. Buskey signaled Mr. Camo to come over; Mr. Camo, assuming Mr. Buskey was a repairman, complied. As Mr. Camo noticed Mr. Simms on top of Mr. Sanchez de Paz, Mr. Buskey snatched Mr. Camo's necklace off his neck with one hand, took out a knife with the other hand, and pointed the knife at Mr. Camo. Mr. Camo grabbed a bottle from the trash and prepared to "throw it at [Mr. Buskey]." Mr. Buskey "took off running." Mr. Lopez testified that he was awakened by someone trying to force open the door to his room. He saw a man enter the room with a knife, and noticed that Mr. Camo had grabbed a bottle. The intruder left the room.[4]

---

[3] Later, Mr. Sanchez de Paz picked out Mr. Simms's picture from a photo array, identifying him as the shorter of the two robbers.

[4] The government introduced corroborating video evidence showing Mr. Buskey and Mr. Simms walking towards the 3600 block of Warder Street at 11:08 a.m., and at 11:17 a.m., running away from the house.

Jose Umna, who worked at Famous Pawnbrokers in Silver Spring, Maryland, a store that pawns and buys used merchandise, identified surveillance video taken at the store on September 7, 2013, and September 16, 2013, the dates of the robberies. The videos depicted Mr. Simms and Mr. Buskey. Mr. Umna also identified a document, routinely kept at the store, that listed all transactions by date and by name of the customer. The document listed the following items next to Mr. Simms's name – "necklace, bracelet, rings." After watching the surveillance videos of the store for September 7 and 16, 2013, Paulette Hebron, Mr. Buskey's mother, identified him as one of the persons in the videos.

### *The Jury Instructions*

After all of the evidence had been introduced,[5] the trial court discussed the proposed jury instructions with all counsel. On the morning of May 22, 2014, the trial court made a brief reference to the aiding and abetting liability theory as he discussed the co-conspirator liability theory. The prosecutor asked that the court give the instruction on co-conspirator liability, Criminal Jury Instruction No. 7.103

---

[5] There was one witness for the defense. Mr. Buskey presented the testimony of a police officer who provided the descriptions of the assailants that Mr. Sanchez de Paz had given to the officer during a police interview. The officer's notes showed that Mr. Camo and Mr. Sanchez de Paz stated that they would be unable to recognize their assailants.

(A), explaining in response to a question from the trial judge, that if the jury found there was a conspiracy it could "find liability under the co-conspirator liability theory," but if the jury "fail[ed] to find a conspiracy," it could "consider the aiding and abetting theory [of liability]." The judge asked if defense counsel objected to adding 7.103 (A), and noted that he "assume[d] [he] would just add it at the bottom of the conspiracy instruction, . . . [o]r at the end of the rest of the instructions[.]" When counsel for Mr. Simms questioned the need for 7.103 (A), at the judge's request, the prosecutor repeated her previously stated rationale for requesting the co-conspirator liability instruction. The judge asked all counsel to focus on that issue, and inquired if there was anything defense counsel "needed to change" in the proposed instructions; the judge gave counsel additional time to respond.

After the lunch break, the trial court revisited the proposed instructions. Counsel for Mr. Buskey stated that he had "no additions, deletions, or corrections," and counsel for Mr. Simms declared that he was "fine" with the proposed instructions. The prosecutor asked where the judge had placed the co-conspirator liability instruction, and whether it was "separated from the conspiracy [instruction]." The judge responded, "It's at the end of the overt acts." Neither defense counsel objected to the location or the substance of the co-conspirator liability instruction.

During its instructions to the jury, the trial court identified the elements of each of the charged offenses: conspiracy to commit burglary, robbery, and kidnapping; second degree burglary (September 7th incident – the Carranza sisters); first degree burglary while armed (September 16th incident – Sanchez de Paz and Camo); kidnapping (of the Carranza sisters); kidnapping while armed (of Mr. Sanchez de Paz); armed robbery (of Mr. Sanchez de Paz and Mr. Camo); robbery (of the Carranza sisters); and CDW (the September 16th incident). The trial court also instructed the jury on co-conspirator liability, and aiding and abetting liability.[6] The court gave the co-conspirator liability instruction after most

---

[6] In addressing aiding and abetting liability, the judge told the jury, in part:

> You may find the Defendant guilty of the crime charged in the Indictment without finding that he personally committed each of the acts that make up the crime or that he was present while the crime was being committed.
> Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender.
> It makes no difference which label you attach. The person is as guilty of the crime as he would be if he had personally committed each of the acts that make up a crime.
> To find that a Defendant aided and abetted in committing a crime, you must find that the Defendant knowingly associated himself with the commission of the

(continued…)

of the substantive conspiracy instruction, including the alleged overt acts. However, when the trial court finished with the instruction about overt acts, it turned to the subject of proof regarding a conspiracy, and added a one-sentence description of a conspiracy before transitioning to the co-conspirator liability charge. After giving the co-conspirator liability charge, the trial court summarized the proof necessary to establish the crime of conspiracy. Then the court moved on to lay out the elements of second degree burglary.

The aiding and abetting liability instruction was not given until after the court had discussed all of the substantive crimes. The court referenced burglary, robbery, and kidnapping during its aiding and abetting liability instruction, but it

---

(…continued)

crime; that he participated in the crime as something he wished to bring about and that he intended by his actions to make it succeed.

Some affirmative conduct by the Defendant in planning or carrying out the crime is necessary. Mere physical presence by the Defendant at the place and time the crime is committed is not by itself sufficient to establish his guilt.

However, mere physical presence is enough if it is intended to help in the commission of the crime.

The government is not required to prove that anyone discussed or agreed on a specific time or method of committing a crime.

made no mention of the CDW charge;[7] nor did the court mention the "while armed" element for burglary, robbery, or kidnapping. Counsel for Mr. Buskey and Mr. Simms did not voice an objection at the end of the trial court's instructions to the jury.

### *The Jury Notes*

---

[7] The trial court stated:

> I'm now going to instruct you on the concept of aiding and abetting. . . . I already instructed you on the elements of [burglary,] robbery and kidnapping.
>
> With respect to the charge of burglary, regardless of whether a Defendant is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that that particular Defendant personally acted with the intent to enter a building or dwelling with the intent to commit robbery.
>
> With respect to the charge of robbery, regardless of whether the Defendant is aider and abettor or principal offender, the Government must prove beyond a reasonable doubt that the Defendant personally acted with the intent to take property of another through force and putting a Complainant in fear or by sudden snatching with the intent to steal the property.
>
> With respect to the charge of kidnapping, regardless of whether the Defendant is an aider and abettor or principal offender, the Government must prove beyond a reasonable doubt that the Defendant personally acted with the intent to seize, confine, abduct or carry away the Complainant for the purpose of robbing him or her.

On the day after receiving the court's instructions, the jury sent a note to the judge at 2:16 p.m., inquiring first about the scope of the intended use of an object as a dangerous weapon – "In regards to the third element of 'carrying a dangerous weapon,' please clarify the scope [of] intended use?" The jury further explained its inquiry about intended use. In its response to this inquiry, the re-instruction clarified the distinction between carrying an object "as a tool or for other useful purposes" and carrying an object with intent to use it "as a dangerous weapon."

The second part of the first question asked, "Can 'aiding & abetting' apply to the charge 'carrying a dangerous weapon[?]'" The prosecutor proposed that the answer to the second part of the first note should be, "Yes," and asserted that aiding-and-abetting liability could apply to CDW but only specifically to the "carrying of the weapon," not the crime being committed while the principal is carrying the dangerous weapon.[8] Counsel for Mr. Simms objected to any additional language. The trial court acknowledged the objection of defense counsel. However, the court stated that "a portion of the appropriate instruction simply wasn't given initially." The court ultimately decided on the following

---

[8] All counsel and the trial court expressed the view that the evidence showed two knives, but the court pondered the possibility that the jury might have believed that there was one knife that was shared by Mr. Buskey and Mr. Simms.

response: "[Y]es, aiding and abetting can apply to the charge of Carrying a Dangerous Weapon – the following can be added to the definition of Aiding and Abetting set forth on page 25 of the Jury Instructions":

> With respect to the charge of carrying a dangerous weapon, regardless of whether a defendant is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that the defendant *acted with the intent that the weapon be used unlawfully*.

(emphasis added). Neither counsel raised an objection to the re-instruction.

The jury sent a second note at 3:00 p.m., stating and asking:

> Armed robbery – aiding & abe[tt]ing (in regards to element 4) 'defendant personally acted with the intent to take property of another through force'
> 1. Does this include enabling another defendant to do the taking? Or does defendant himself have to do the taking (i.e. snatching off necklace)[?]
> 2. Does instruction on aiding & abe[tt]ing for robbery also apply to armed robbery?

(emphasis in original). The prosecutor proposed that the court answer the first question, "Yes." Mr. Buskey and Mr. Simms proposed that the court simply "direct [the jury] to re-read the aiding and abetting instruction; the trial court agreed with appellants. As to the second question, the trial court decided to

respond only to the question posed – whether the instruction on aiding and abetting for robbery also applied to armed robbery. However, the court observed that the language it proposed was "the specific addition for armed offenses." The court inserted the standard language from Criminal Jury Instruction No. 3.200 in its proposed response to the second question of the second jury note. Counsel for Mr. Buskey and Mr. Simms answered, "No, Your Honor," to the court's question, "Does anyone have any objection to the language . . . that's proposed or to be added?" The trial court's written response stated:

Question one

To find that a defendant aided and abetted in committing a crime, you must find that the defendant knowingly associated himself with the commission of the crime, that he participated in the crime as something he wished to bring about, and that he intended by his actions to make it succeed.

Some affirmative conduct by the defendant in planning or carrying out the crime is necessary. Mere physical presence by the defendant at the place and time the crime is committed is not by itself sufficient to establish his guilt. However, mere physical presence is enough if it is intended to help in the commission of the crime.

Question two

[Y]es with the following elements added to the elements provided for aiding and abetting robbery[:]

An aider and abettor is legally responsible for the principal's use of a weapon during an offense if the government proves beyond a reasonable doubt that the aider and abettor had *actual knowledge* that some type of weapon would be used to commit the offense. You may, but are not required to, infer that the aider and abettor knew that some type of weapon would be used to commit the offense from the surrounding circumstances. You may consider any statement made, acts done or not done, the reasonable foreseeability that some weapon would be required to commit the offense, and any other facts and circumstances received in evidence that indicate the aider and abettor's knowledge or lack of knowledge.

(emphasis added).

Instead of responding to the jury questions in the courtroom, the trial court "staple[d] the answer to the particular note" and asked the clerk to take the typewritten responses back to the jury room. No party objected or suggested a different approach.

## THE PARTIES' ARGUMENTS

Mr. Buskey and Mr. Simms contend that the trial court failed to properly instruct the jury with respect to the CDW offense, burglary while armed, armed robbery, and kidnapping while armed. They argue that the trial court erred in failing to instruct the jury on the required *mens rea* for aiding and abetting "while

armed" offenses and for aiding and abetting CDW.  They claim that the trial court did not accurately respond to the jury's question, "Can aiding and abetting apply to the charge 'carrying a dangerous weapon,'" because the court used the terms "can apply" and "can be added," thus leaving it up to the jury to decide whether to follow the instruction given in response to the jury note.  They also argue that the court erred in failing to separate or differentiate the co-conspirator liability instructions from the conspiracy instructions.  They assert that even when the jury manifested confusion about aiding and abetting liability with respect to the charged offenses, the trial court did not tell the jury that a person must have "actual knowledge" that the principal had a dangerous weapon during the commission of the charged offenses.  Furthermore, Mr. Buskey and Mr. Simms mainly rely on federal circuit decisions in arguing that the trial court committed a reversible error by not reading aloud its supplemental instructions in response to the jury's notes.

The government maintains that Mr. Buskey and Mr. Simms either waived their instructional error claims or those claims should be reviewed for plain error. The government argues that (1) both the original instructions to the jury and the supplemental instructions, in response to jury notes, "fairly and accurately stated the law," and that (2) "the use of the word 'can' was plainly not intended to convey that jurors could take or leave the instructions -- merely to convey that the

additional guidance was there for any juror that might further inquire into how aiding-and-abetting liability principles applied to CDW." Moreover, the government asserts that "the jury was never told not to apply the aiding-and-abetting instructions to the armed offenses, and the supplemental instructions made clear that the aiding-and-abetting instructions applied to the armed, as well as the unarmed, offenses." As to the argument that the trial court erred by failing to read aloud its responses to the jury's notes, the government distinguishes cases cited by appellants, points to other federal circuit cases that approve written instructions, and contends that the failure to read the responses aloud did not constitute "plain error . . . that seriously prejudiced appellants' rights or in any way undermined the fairness, integrity, or public reputation of the jury's unanimous guilty verdict against both appellants."

## ANALYSIS

### *Standard of Review*

"When a party fails to raise a timely objection to an instruction, we will review that claim of error under the plain error standard." *Mobley v. United States*, 101 A.3d 406, 422 (D.C. 2014) (internal quotation marks and citation omitted); *see*

*also Griffin v. United States*, No. 15-CF-263, 2016 D.C. App. LEXIS 296, at *4 (D.C. August 4, 2016). "Under the test for plain error, an appellant must show (1) error, (2) that is plain, and (3) that affected [his] substantial rights." *Fortune v. United States*, 59 A.3d 949, 954 (D.C. 2013) (internal quotation marks and citation omitted). "To show that the error affected a substantial right, the appellant . . . must show a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *Id*. (internal quotation marks and citation omitted); *see also Muir v. District of Columbia*, 129 A.3d 265, 274-75 (D.C. 2016) ("For a plain error to 'affect substantial rights,' it must be of such a character 'that viewed in the context of the trial, there is a reasonable probability that but for the error the factfinder would have had a reasonable doubt respecting guilt.'") (citation omitted). "Even if all three of these conditions are met, this court will not reverse unless (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Fortune*, *supra*, 59 A.3d at 954. (internal quotation marks and citation omitted). Under prong four of the plain error standard, this court "determine[s] whether [it] can affirm the conviction without compromising its goal of delivering justice or diminishing itself in the eyes of the public." *In re Patrice Taylor*, 73 A.3d 85, 103 (D.C. 2013).

***Did Appellants Waive Their Challenges to the Jury Instructions?***

The government contends that appellants waived their instructional error claims because they "invited the very aiding-and-abetting instructions they now deem reversible error." We are not convinced by the government's waiver argument. "Generally, the invited error doctrine precludes a party from asserting as error on appeal a course that he or she has induced the trial court to take." *Preacher v. United States*, 934 A.2d 363, 368 (D.C. 2007). Our review of the record satisfies us that the invited error doctrine does not apply to this case. We see no indication in the record that either trial counsel for Mr. Buskey or Mr. Simms acted in a manner to persuade the trial court not to give the aiding and abetting instructions with respect to CDW or the "while armed" offenses. There is no indication in the record that appellants took a specific position in the trial court on any issue relating to aiding and abetting CDW or the "while armed" offenses, but have taken a different position on that issue in this court. *See Harrison v. United States*, 76 A.3d 826, 840 (D.C. 2013) (citation omitted). Moreover, "[w]e prefer . . . to resolve the issues raised here on the merits," rather than not considering them on the basis of waiver under the invited error doctrine. *Dawkins v. United States*, 108 A.3d 1241, 1244 n.11 (D.C. 2015).

***Plain Error Review Applies to this Case.***

Rule 30 of the Super. Ct. Rules of Criminal Procedure, regarding jury instructions, clearly states that "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." Super. Ct. Crim. R. 30. Here, the trial court discussed the proposed jury instructions with the prosecutor and defense counsel on the morning and afternoon of May 22, 2014. The discussion focused on the aiding and abetting instruction, and it specifically included whether the co-conspirator liability instruction should be given. While Mr. Simms's counsel initially questioned the need for the instruction, neither he nor counsel for Mr. Buskey raised any objection after the trial court decided to give the instruction. The question of where the co-conspirator liability instruction had been placed within the jury instructions also was specifically raised by the prosecutor during the court's discussion with counsel. Neither defense counsel raised any objection to the placement or location of the instruction.

After the trial court completed its instructions to the jury, counsel for Mr. Buskey stated, "For the record, Your Honor, I have no objection to the instructions that were given." The trial court asked, "Anybody else? Was there anything else

you noticed?" Counsel for Mr. Simms raised no objections to the instructions given. Hence, because no objection to the initial jury instructions was raised before the jury retired to deliberate, our review of the initial instructions is subject to the plain error standard.

During its deliberations, the jury sent two notes to the trial judge concerning aiding and abetting and the CDW charge; and aiding and abetting and the armed robbery charge. Counsel for Mr. Buskey and Mr. Simms were required to lodge timely objections to any proposed reinstruction given to the jury. *Mobley*, *supra*, 101 A.3d at 422. Both defense counsel initially objected to any additional language regarding the initial CDW instruction, but neither counsel voiced any objection to any of the final proposed responses to the two jury notes.

Both Mr. Buskey and Mr. Simms concede that they did not raise objection to the final versions of the trial court's initial jury instructions and the responses to the two jury notes, and that the proper standard of review is plain error. We agree that plain error applies to this case because Mr. Simms and Mr. Buskey failed to raise a timely objection to the trial court's initial failure to instruct the jury regarding aiding and abetting CDW, and aiding and abetting burglary while armed, armed robbery while armed and kidnapping while armed, and they did not object

to the final version of the trial court's response to the two jury notes. *See Mobley*, *supra*, 101 A.3d at 422; *Griffin*, *supra*, 2016 D.C. App. LEXIS 296, at *4.

### *Did the Trial Court Commit Instructional Error, and If So, Was It Plain Error?*

Under the first prong of the plain error standard, we consider whether the trial court committed error in instructing and reinstructing the jury. "Deviation from a legal rule is 'error' unless the rule has been waived." *United States v. Olano*, 507 U.S. 725, 732-33 (1993). "The question whether the challenged instruction was proper – *i.e.*, what elements the prosecution must prove to show aiding and abetting . . . – is one of law," and "our review is *de novo*." *Wilson-Bey v. United States*, 903 A.2d 818, 827 (D.C. 2006) (citation omitted). Under the second prong of the plain error standard, we determine whether any error is plain at the time of appellate review, that is, whether the error is "clear" or "obvious." *Olano*, *supra*, 507 U.S. at 734 (citation omitted); *In re Taylor*, *supra*, 73 A.3d at 99 (citation omitted).

### Standard of Review for Jury Instructions

"When reviewing a claim of instructional error, this court will examine the instructions in their entirety"; and "even where a portion of an instruction is technically incorrect, reversal is not required if the error is cured by a subsequent charge or by a consideration of the entire charge." *Jackson v. United States*, 653 A.2d 843, 847 (D.C. 1995) (internal quotation marks and citation omitted). "The decision on what further instructions, if any, to give in response to a jury question lies within the sound discretion of the trial court." *Sanders v. United States*, 118 A.3d 782, 783 (D.C. 2015) (internal quotation marks and citation omitted). "We have emphasized that when a jury sends a note indicating its confusion with the law governing its deliberations, the trial court must not allow that confusion to persist; it must respond appropriately." *Jordan v. United States*, 18 A.3d 703, 707 (D.C. 2011) (internal quotation marks and citation omitted). "[W]hen the jury has made known its specific difficulties understanding the law, the trial court should clear them away with concrete accuracy." *Colbert v. United States*, 125 A.3d 326, 334 (D.C. 2015) (internal quotation marks and citation omitted).

**CDW**

We first consider whether the trial court erred with respect to the aiding and abetting CDW instruction and re-instruction. "CDW . . . is a criminal offense in and of itself." *Broadie v. United States*, 925 A.2d 605, 619 (D.C. 2007). To convict a person of carrying a dangerous weapon (here a knife), the government "must prove beyond a reasonable doubt (1) that the defendant carried the knife either openly or concealed, (2) that the defendant had the general intent to do the acts constituting the carrying of the knife, and (3) that the purpose of carrying a knife was its use as a dangerous weapon." *Reed v. United States*, 828 A.2d 159, 162 (D.C. 2003) (citing *Strong v. United States*, 581 A.2d 383, 385-86 (D.C. 1990)). CDW "requires that the government prove that a defendant actually carried a weapon," *Broadie*, *supra*, 925 A.2d at 619, and to prove aiding and abetting CDW, the government must establish that the aider and abettor engaged in some affirmative act to assist the carrying of the dangerous weapon. *See McCoy v. United States*, 760 A.2d 164, 186 (D.C. 2000) ("To support a conviction for carrying a pistol without a license on an aiding and abetting theory of liability, there must be a showing of some conduct by an alleged accomplice of an affirmative character in furtherance of the act of carrying the pistols by the . . . principals.") (citing *Halicki v. United States*, 614 A.2d 499, 503 (D.C. 1992)) (internal quotation marks omitted).

In its initial instructions the trial court did not give the jury proper legal principles governing aiding and abetting CDW. That omission was error, and the error was clear and obvious, as the trial court readily acknowledged in stating that "a portion of the appropriate instruction simply was not given initially." However, the jury recognized that it did not receive instructions about aiding and abetting CDW, and the jury sent a note of inquiry to the trial court. We must consider whether the trial court's responses to the jury's note cured the initial error relating to the CDW charge.

Contrary to appellants' argument, we do not believe that the trial court's use of the language, "can apply" and "can be added," in its reply to the jury's note left the jury believing that it had discretion whether to apply the supplemental instruction in determining the aiding and abetting CDW question. The trial court obviously used "can" in response to the jury's use of the word "can" – "Can aiding and abetting apply" to CDW? The first part of the response to the question was, yes, aiding and abetting "can apply" to the CDW offense. The court then proceeded to state applicable legal principles and its substantive response to the question centered on intent – the defendant acted "with the intent that the weapon be used unlawfully." However, the response did not explicitly address the requirement, set forth in *Halicki* and *McCoy*, that the accomplice must aid and abet

the principal's "carrying" of the dangerous weapon, that is, that the aider and abettor must take some step "to further the carrying" of the knife in this case, or to do something "in connection with" the knife carried and used by the principal. *McCoy*, *supra*, 760 A.2d at 186. Acting with the intent that a knife be used unlawfully does not in and of itself automatically satisfy the requirement that the accomplice himself do something to further the carrying of the knife by the principal. The accomplice may mentally intend for the knife to be used but may not do anything to assist the principal with the carrying and use of the knife.

In sum, we cannot say that the supplemental instruction cleared up, "with concrete accuracy," the jury's difficulties with the initial instruction. *Colbert*, *supra*, 125 A.3d at 334 (citation omitted). The trial court's response to the jury's aiding and abetting CDW note told the jury that "whether the defendant is an aider or abettor or a principal offender, the government must prove beyond a reasonable doubt that the defendant *acted with the intent that the weapon be used unlawfully*." This instruction was to be added to the general aiding and abetting instruction given with the initial jury instructions, but that general definition did not speak explicitly to the accomplice's aiding and abetting the carrying of a dangerous weapon. Therefore, looking at the entirety of the aiding and abetting CDW charge,

we are constrained to conclude that the trial court's charge constituted error that was plain.

## Aiding and Abetting While Armed Offenses

The trial court's initial instruction also constituted error with respect to the aiding and abetting burglary while armed, armed robbery, and kidnapping while armed charges. Like the CDW offense, the initial instruction omitted any mention of aiding and abetting these "while armed" offenses.

To determine whether the trial court properly instructed the jury on aiding and abetting liability for the "while armed" offenses in light of its response to the jury's second note, we are guided by the following key legal principles. "[A]n aiding and abetting conviction requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime." *Rosemond v. United States*, 134 S. Ct. 1240, 1248 (2014). "Any instruction on aiding and abetting must make clear that a defendant needs to have the *mens rea* required of

the underlying crime in order to be convicted of the crime as an aider and abettor."

*Appleton v. United States*, 983 A.2d 970, 977 (D.C. 2009) (citation omitted); *see also Wheeler v. United States*, 977 A.2d 973 (D.C. 2009), *reh'g granted*, *opinion modified*, 987 A.2d 431, 431 (D.C. 2010) (per curiam) (The "charged aider and abettor will have to know and intend the steps taken, amounting to the same mental state required of the principal."); *Lancaster v. United States*, 975 A.2d 168, 173 (D.C. 2009) (jury instruction "improperly authorized the jury to find [appellant] guilty of aiding and abetting armed robbery without proof that [appellant] [himself] had the essential *mens rea* to commit the crime") (citing *Wilson-Bey*, *supra*, 903 A.2d at 838.).

To be guilty of a crime committed "while armed" as an aider and abettor, "a person must, *inter alia*, intend to facilitate the *entire offense*, not some lesser offense." *Robinson v. United States*, 100 A.3d 95, 105 (D.C. 2014) (citation omitted). Thus, "the enhanced penalty provisions of D.C. Code § 22-4502 [the "while armed" statute][9] may not be applied to an aider and abettor who only had

---

[9] "D.C. Code § 22-4502 (a) permits the imposition of enhanced punishment on defendants convicted of having committed a crime of violence or a dangerous crime 'when armed with or having readily available' a firearm or other dangerous or deadly weapon." *Robinson*, *supra*, 100 A.3d at 105 (citation omitted). "The term 'armed with' means having 'actual physical possession' of the weapon in
(continued…)

'reason to know' the principal offender was 'armed with' a dangerous weapon during the commission of a violent or dangerous crime." *Id*. at 106. "Actual knowledge of the weapon is required for either the principal offender . . . or the aider and abettor to be subject to § 22-4502." *Id*.

Given our decision in *Robinson*, the trial court's initial aiding and abetting instruction did not make clear that for a defendant to be found guilty of the "while armed" offenses, as an accomplice, he had to know that the principal was armed during the commission of the robbery, burglary and kidnapping offenses. *Robinson*, 100 A.3d at 105-106. However, the trial court's supplemental instruction in this case cured the initial error by providing a correct statement of the law – informing the jury that to convict a defendant of armed robbery as an aider and abettor, it would have to find not only that the defendant intended to facilitate the robbery, but also that he did so with actual knowledge that the principal was carrying a knife during the commission of the robbery.

---

(…continued)
question, while 'having readily available' means, 'at a minimum,' having constructive possession of the weapon." *Id*. (citation omitted).

The trial court's supplemental instruction was limited to the question posed about armed robbery.[10] But the supplemental instruction on aiding and abetting armed robbery implicitly informed the jury that the same legal principle applicable to robbery while armed also applied to burglary while armed and kidnapping while armed.

## The Co-Conspirator Liability Instruction

Mr. Buskey and Mr. Simms assign as error the trial court's failure to separate the co-conspirator liability instruction from its conspiracy instruction. Since neither defense counsel objected to the placement or location of the co-conspirator liability charge, our review is for plain error. At the outset we discern no error in the substance of the trial court's co-conspirator liability charge, and neither Mr. Buskey nor Mr. Simms alleges such an error. The central question is whether the trial court committed error when it placed that charge so close to the conspiracy charge and the overt acts alleged in furtherance of the conspiracy, and

---

[10] The trial court decided to limit itself to the precise question posed by the jury and therefore did not mention the requirements for aiding and abetting armed burglary and armed kidnapping. Rather, the court assumed that the jury would apply the principles given for aiding and abetting armed robbery to aiding and abetting armed burglary and armed kidnapping.

further sandwiched the instruction between a summary of proof necessary to establish a conspiracy and a one-sentence description of a conspiracy.

Clearly, the structure of the trial court's entire initial instruction made it difficult to ascertain the substantive law for each charged crime, and the law pertaining to two possible theories of accomplice liability – co-conspirator liability and aiding and abetting liability, as well as the distinction between the two theories. The jury instruction as a whole should provide the jury with a clear path to understanding the substantive law, the theories of defendant liability, and the general but fundamental principles governing a defendant's guilt. We do not believe that the structure of the jury instructions in this case achieved those goals.

The failure to structure the instructions so that they clearly manifest the distinction between conspiracy and co-conspirator liability, and the distinction between co-conspirator liability and aiding and abetting liability constituted error that is plain.[11] *See Collins v. United States*, 73 A.3d 974, 981 (D.C. 2013) (citing

---

[11] *Cousart v. United States*, No. 15-CF-151, 2016 D.C. App. LEXIS 299 (D.C. August 4, 2016), concerning error that is plain and the giving of a model instruction, does not dictate a different conclusion simply because the trial court here gave a co-conspirator liability instruction that was accurate and that mirrored the model instruction contained in the Criminal Jury Instructions for the District of Columbia, the Red Book. We said in *Cousart*, "[a]n instruction that follows

(continued…)

*Wilson-Bey*, *supra*, 903 A.2d at 839 for the proposition that, "*Pinkerton* [co-conspirator] liability and aiding and abetting liability are distinct legal theories and require proof of different elements."); *see also Erskines v. United States*, 696 A.2d 1077, 1080 (D.C. 1997) ("Aiding and abetting [liability] . . . resembles *Pinkerton* liability but nonetheless differs from it significantly"; "[u]nlike the latter, aiding and abetting does not make 'the personal involvement of the defendant in the [substantive] crime' irrelevant.").

## Failure to Read the Supplemental Instructions in Open Court

Mr. Buskey and Mr. Simms argue that the trial court committed error by sending written responses to the jury notes instead of reading the responses in open court. This jurisdiction has limited case law on the issue of whether the trial judges are required to read their initial instructions and their responses to jury notes

---

(…continued)

without objection the model criminal instruction would constitute an error that is 'plain' only in an unusual case." *Id*. at *7. There, the question that prompted this statement in our opinion was much less complex – whether the object used during a crime was a dangerous weapon for two offenses (assault with a dangerous weapon and CDW) but not for another offense (aggravated assault while armed). Here, the question confronting us is much more complex – whether any accomplice was guilty of the charged crimes on a theory of co-conspirator liability or a theory of aiding and abetting liability. The structure and location of the jury instructions on co-conspirator and aiding and abetting liability, as described above, makes this the "unusual case" mentioned in *Cousart*.

in open court. The circumstances of these limited cases vary and do not squarely mirror those in this case. In *In re Pearson*, 262 A.2d 337 (D.C. 1970), this court was critical of a trial judge who gave a supplemental instruction only to the jury foreperson. We said, "It is . . . essential that all instructions to the jury be given by the trial judge orally in the presence of counsel and the defendant." *Id*. at 340 (quoting *United States v. Noble*, 155 F.2d 315, 318 (3d Cir. 1946)). *In re Pearson* involved a situation in which the polling of the jury, following the announcement of the jury's verdict, revealed one dissenting juror. The trial court sent the jury back to the deliberating room, but then called only the jury foreperson back to the courtroom. The court told the foreperson, in part, that "there should be no overbearing of any individual juror by any other member of the Jury." *Id*. at 338. The court could not be sure that the foreperson conveyed these instructions to the rest of the jury.

In *Hallmon v. United States*, 722 A.2d 26 (D.C. 1998), the jury sent out a note asking if it could get a copy of the jury instructions. The courtroom clerk responded, "No," but indicated that the instruction could be read to the jury in open court. The question presented was whether "the trial court committed reversible error by allowing the courtroom clerk to communicate directly with the jury during its deliberations." *Id*. at 27. We said, in passing, "In this case as in any case, the

jury's message should have been answered in open court, and [defense] counsel should have been given an opportunity to be heard before the trial judge responded." *Id*. at 27-28 (internal quotation marks and citation omitted). *Cox v. United States*, 999 A.2d 63 (D.C. 2010), presented a situation where the jury posed a question about the meaning of "readily available," and the trial court responded in writing, without discussing the jury's note or the response with the parties' respective counsel. *Id*. at 70. We concluded that the trial court erred procedurally and substantively. We declared that procedurally, "the jury's message should have been answered in open court, and defense counsel should have been given an opportunity to be heard before the trial judge responded." *Id*. at 70 (quoting *Hallmon*, *supra*, 722 A.2d at 27-28).

Mr. Buskey and Mr. Simms, and the government, cite cases from federal circuits favoring their perspective that either the trial court must read aloud a response to jury notes, or is not required to read aloud the responses.[12] However,

---

[12] Appellants cite *United States v. Perry*, 479 F.3d 885, 892 (D.C. Cir. 2007), *Guam v. Marquez*, 963 F.2d 1311, 1314-15 (9th Cir. 1992); and *United States v. Noble*, 155 F.2d 315 (3d Cir. 1946). The government cites *Beardslee v. Woodford*, 358 F.3d 560, 590 (9th Cir.), *supplemented sub nom. Beardslee v. Brown*, 393 F.3d 1032 (9th Cir. 2004); *United States v. Dellinger*, 472 F.2d 340, 379 (7th Cir. 1972). In the District of Columbia Circuit case, the district judge told the jury that he would read aloud the elements of the charged offense, but would not read the statute defining the offense, nor would he read the definition of key

(continued…)

in light of this court's precedents, discussed above, we hold that it was error for the trial court to send written supplemental instructions to the jury, rather than reading them aloud in open court.

### *Did the Error or Errors That Were Plain Affect Appellants' Substantial Rights?*

Because we conclude that each of the assigned errors constituted either error or errors that were plain, we now examine whether these errors affected Mr. Buskey's and Mr. Simms's substantial rights, that is, whether there is a reasonable probability that but for the claimed errors, the outcome of their trial would have been different, or the jury would have had a reasonable doubt about their guilt.

---

(…continued)
terms, but he indicated that all of the written instructions would be sent back as the jury retired to deliberate. *Perry*, *supra*, 479 F.3d at 888. Neither counsel for the defense nor the government objected. After reviewing decisions from the third and ninth circuits, the court declared, "We agree with our sister circuits that a trial judge must read aloud jury instructions in their entirety," and that "the district court erred in failing to read to the jury the definitions of 'computer,' 'loss' and individual." *Id*. at 892-93.

With respect to the CDW error, testimony by Mr. Sanchez de Paz and Mr. Camo established that two knives were carried during the September 16th crimes. Mr. Sanchez de Paz stated that Mr. Buskey held a knife to his neck when appellants followed him into his residence and forced him to the ground. Then, while Mr. Buskey proceeded to the unit that Mr. Sanchez de Paz identified as his own (but in which Mr. Camo and Mr. Lopez resided), Mr. Simms held a knife to Mr. Sanchez de Paz's neck. Mr. Camo testified that as he noticed Mr. Simms on top of Mr. Sanchez de Paz, Mr. Buskey took out a knife and pointed it at Mr. Camo. In light of this testimony from Mr. Sanchez de Paz and Mr. Camo, the government clearly presented compelling evidence that there were in fact two knives in use at the same time at the scene of the second robbery, one held to the neck of Mr. Sanchez de Paz by Mr. Simms while Mr. Buskey used the other to threaten Mr. Camo. Consequently, Mr. Simms was guilty of CDW as a principal. Therefore, despite the errors in the trial court's instructions, as a whole, we hold that no "reasonable probability exists that the outcome of the case would have differed" if the trial court had properly instructed the jury. *Cousart*, *supra*, 2016 D.C. App. LEXIS 299, at *15.

As for aiding and abetting the "while armed" offenses, (1) since the supplemental instruction explicitly (with respect to armed robbery) and implicitly

(with regard to armed burglary and armed kidnapping) cured the error in the trial court's initial instructions, and (2) given the overall strength of the government's evidence, including Mr. Simms's knowledge that Mr. Buskey was armed with a knife, we conclude that Mr. Buskey and Mr. Simms failed to satisfy the third prong of the plain error standard. In sum, they failed to show that "there is a reasonable probability that but for the error the [jury] would have had reasonable doubt respecting guilt" as to the armed robbery, armed burglary, and armed kidnapping charges.

The jury raised no question about the co-conspirator liability charge. Moreover, we see nothing in the record that even remotely suggests that the jury understood that the co-conspirator liability theory was available to them in determining whether appellants were guilty of armed robbery, armed burglary and armed kidnapping. The location of this instruction within the relatively long conspiracy charge may have precluded the jury's appreciation of co-conspirator liability as an option in this case. In that sense, appellants may have benefitted from the trial court's error. In short, as to the co-conspirator liability charge, Mr. Buskey and Mr. Simms cannot satisfy the third prong of the test for plain error.

Finally, the trial court's sending of written instructions to the jury in response to jury notes does not appear to have affected Mr. Buskey's and Mr. Simms's substantial rights. Since the jury had not been instructed initially on aiding and abetting CDW, and aiding and abetting the "while armed" crimes, the jury undoubtedly read the trial court's written responses to its two notes. Furthermore, given the testimony mentioned above regarding CDW and the "while armed" offenses, and given the fact that Mr. Buskey and Mr. Simms do not challenge the substance of the co-conspirator liability charge, we see no reasonable probability on this record that the outcome of Mr. Buskey's and Mr. Simms's trial would have differed if the court had read aloud the responses to the jury's two notes. In short, the delivery of written responses to the jury's notes does not satisfy the third prong of the test for plain error.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*